OPINION
{¶ 1} This matter is before the Court on the notice of appeal of Security National Bank and Trust Co. ("SNB"), filed August 13, 2007. On July 10, 2006, SNB filed a complaint against Charles and Carol Reynolds ("Reynolds"), seeking to recover *Page 2 
the deficiency on a promissory note originally secured by a vehicle. The Reynolds answered SNB's complaint on August 4, 2006, also asserting a counterclaim alleging that SNB violated the Fair Debt Collection Practices Act by suing them in an amount greater than what they could possibly owe on the unpaid loan. The pertinent facts are as follows:
 {¶ 2} In March 2004, the Reynolds secured a loan from SNB, executing to SNB a promissory note for $21,838.57. The collateral for that note was a 2001 Pontiac Montana minivan. At some time after the promissory note was executed, the Reynolds defaulted and voluntarily surrendered the Pontiac to SNB.
 {¶ 3} In June 2006, SNB sold the Pontiac at auction for $5,200. This amount was applied to the loan, leaving an unpaid balance. Apparently, the Pontiac sold for less than the reserve amount and may have been sold in contravention of Ohio laws governing the sale of such collateral, however, that matter is not addressed on this appeal.
 {¶ 4} The matter proceeded to bench trial before a magistrate on March 22, 2007. SNB called Pam Burnett, its collection manager, as its first witness.[1] SNB intended to question Ms. Burnett regarding her opinion of the value of the Pontiac. Establishing the value of the vehicle was important because it would establish the alleged deficiency owed by the Reynolds. Ms. Burnett testified that she worked at SNB *Page 3 
for five and one half years, that she was the collection manager, that she handled the SNB's repossession cases, and that she was familiar with the Reynolds account.
 {¶ 5} SNB unsuccessfully attempted to elicit from Ms. Burnett details about a "black book." Ostensibly, the black book is a reference guide for used or new car values. SNB repeatedly attempted to elicit testimony regarding the black book through Ms. Burnett. On each of these occasions, counsel for the Reynolds objected on the basis of a lack of foundation. The court sustained each of these objections. The following exchanges are representative of SNB's attempts to elicit testimony about the black book:
 "Q Okay. And you had indicated that you used the black book?
 "A Correct.
 "Q For values. Could you give us a little bit more information on what the black book is?
 "A Well, that's-
 "MR.THOMPSON: I'll object, Your Honor.
 "THE COURT: (Unintelligible.)
 "MR. THOMPSON: I can't see how she would know what it is or — I mean, she says she uses the book. I don't think there's enough background here.
 "THE COURT: I agree. I'm not even sure she said she used the book. She said the bank did.
 "MS. MARLOW: Okay.
 "THE COURT: So I'm going to sustain the objection. You need to *Page 4 
lay a better foundation."
Transcript, p. 9. And then again later, the following exchange was had:
 "Q: When the Reynolds brought their vehicle in, what did you do specifically with respect to that?
 "A: Okay. We did a condition report in which we went out and inspected the vehicle for any damage. They have a storage lot that we take our vehicles to, if, you know, they are brought in to us and not picked up by an outside company. So we, you know, took the vehicle to the storage lot. At that point then we scheduled it for sale at the auction in Columbus and they — we fax them so that they will come and pick the vehicle up.
 "Q: Okay. When you did all of this, what value did you place on the vehicle?
 "MR. THOMPSON: I object, Your Honor. There's been no foundation laid that she has any knowledge whatsoever of how to value an automobile.
 "THE COURT: I think you've got the same problem. Same objection. . ."
Transcript, p. 12-13.
 {¶ 6} SNB attempted several more times to elicit testimony regarding valuation of the Pontiac, all of which were met with sustained objections. SNB then announced it had no further questions for Ms. Burnett. The Reynolds moved for a directed verdict. Responding, SNB told the Court that it would call Ms. Reynolds as a witness in an attempt to elicit a value for the car. The court allowed this and Ms. Reynolds was *Page 5 
called to the stand. On the stand, Ms. Reynolds testified that she had no knowledge of actual car values nor of the value of the Pontiac. SNB rested and Reynolds again moved for a directed verdict. The court granted the directed verdict in favor of the Reynolds.
 {¶ 7} Immediately thereafter, the Reynolds voluntarily moved to dismiss their Fair Debt Collection Act counterclaim without prejudice. SNB argued that the counterclaim was compulsory, and as such, if the dismissal was granted, it should be with prejudice. The Reynolds countered that their claim was not compulsory because "it would only be an action if something shows up on the client's credit report. Subsequent to this point in time when the debt is deemed owed — now that it's been determined they don't owe it, that's where the cause of action would lie." Transcript, p. 25. The court held that it would dismiss the counterclaim without prejudice and that if the Reynolds re-filed, SNB could address whether the counterclaim was compulsory at that time.
 {¶ 8} SNB asserts two assignments of error. The first assignment is as follows:
 {¶ 9} "THE TRIAL COURT ERRED IN DETERMINING PLAINTIFF FAILED TO PRODUCE PROPER FOUNDATION FOR LAY TESTIMONY."
 {¶ 10} SNB contends that, in accordance with Evid. R. 701, a proper foundation was laid for Ms. Burnett to provide opinion testimony as to the value of the car. The Reynolds argue that Ms. Burnett could only testify as to the value of the Pontiac if she was qualified as an expert pursuant to Evid. R. 702.
 {¶ 11} We review the decision whether to exclude or admit testimony of a lay *Page 6 
witness pursuant to Evid. R. 701 under an abuse of discretion standard. City of Urbana ex rel. Newlin v. Downing (1989),43 Ohio St.3d 109, 113, 539 N.E.2d 140. This standard implies "more than an error of law or judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." Steiner v. Custer (1940),137 Ohio St. 448, 31 N.E.2d 855, paragraph two of the syllabus.
 {¶ 12} Evid. R. 701 states:
 {¶ 13} "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."
 {¶ 14} In the common law, the rule developed that lay witnesses could only testify to facts they observed. Over time, exceptions to this rule were developed. Evid. R. 701 is the modern exception. The rule allows a lay witness to give testimony in the form of opinions and inferences, with two requirements. The second requirement is generally not an issue. Typically a witness would not be called if their testimony were not helpful in some manner. The first requirement, that the opinion be rationally based on the perception of the witness, involves a preliminary question of admissibility, a part of the trial court's gatekeeping responsibilities pursuant to Evid. R. 104.
 {¶ 15} Generally speaking, testimony regarding opinion of value is confined to expert witnesses. Tokles Son, Inc. v. Midwestern IndemnityCo. (1992), 65 Ohio St.3d 621, 625, 605 N.E.2d 936. Indeed, it seems SNB would have had a much easier time had they introduced evidence of the value of the Pontiac through expert testimony. In fact, Ms. Burnett may have been qualified to render an expert opinion, *Page 7 
but SNB elected not to establish her expertise, instead stipulating that no expert testimony would be presented. Nonetheless, as with many of the rules of evidence, there are exceptions. In Tokles, the Court explained:
 {¶ 16} "Some items are complex and their value is intermingled with fact and opinion. In addition, the item may not be available for appraisal. So out of necessity, non-experts are often permitted to enlighten the jury with their own opinions concerning the value of items." 65 Ohio St.3d 621, 625, 605 N.E.2d 936.
 {¶ 17} However, non-expert opinion testimony must still comply with Evid. R. 701. That rule requires that lay testimony in the form of opinion be rationally based on the perception of the witness. Perception connotes sense: visual, auditory, olfactory, etc. Thus, opinion testimony under Evid. R. 701 must be based on firsthand, sensory based knowledge. This requirement accords with the owner-exception discussed in Tokles, above. The owner of property is presumed to have special knowledge of the value of his property because of his familiarity with the property. The Tokles court sheds some light on what foundation might be sufficient to prove familiarity:
 {¶ 18} "[T]he witness must show that he is familiar with the property itself and that he has current sufficient knowledge of the value of the item by, for example, demonstrating a firsthand knowledge of the characteristics of the property, its actual and potential uses and its condition or by showing other meaningful experience in *Page 8 
dealing with the item."[2] 65 Ohio St.3d 621, 627, 605 N.E.2d 936.
 {¶ 19} The line between expert testimony under Evid. R. 702 and lay opinion testimony under Evid. R. 701 is not always easy to draw. In this case, SNB sought to utilize Ms. Burnett as a fact witness, but also sought to utilize her specialized knowledge and familiarity with the black book to establish the value of the Pontiac. However, if SNB intended to utilize Evid. R. 701 here, it would at least have to establish that Ms. Burnett had firsthand knowledge of the vehicle. Yet SNB elicited little testimony to build such a foundation. At best, Ms. Burnett testified that "we" did a "condition report" on the vehicle. She testified that the condition report involved inspecting the vehicle for any damage. Notably, Ms. Burnett did not testify about what the condition report of the Pontiac revealed, nor that she herself inspected the vehicle. Because SNB did not establish Ms. Burnett's firsthand knowledge and investigation of the value of the Pontiac, her testimony was not admissible under Evid. R. 701.
 {¶ 20} SNB also repeatedly and unsuccessfully attempted to introduce testimony from Ms. Burnett regarding the black book. However, and again, prior to asking Ms. Burnett about the black book, SNB elicited scant foundational evidence *Page 9 
demonstrating that Ms. Burnett was so personally knowledgeable about the black book that she was qualified to testify about it. Additionally, the court may have excluded Ms. Burnett's testimony here because the reasoning process she used to value the vehicle was not that of an average person in everyday life. Regardless, we find no abuse of discretion in the exclusion of Ms. Burnett's testimony.
 {¶ 21} Accordingly, SNB's first assignment of error is overruled.
 {¶ 22} SNB's second assignment of error is as follows:
 {¶ 23} "THE TRIAL COURT ERRED IN DISMISSING DEFENDANTS' COUNTERCLAIM WITHOUT PREJUDICE."
 {¶ 24} SNB argues that the Reynolds' counterclaim was compulsory pursuant to Civ. R. 13(A) and that accordingly, the counterclaim must have been brought and tried within SNB's original action or be forever barred. The Reynolds argue that the counterclaim was properly dismissed without prejudice pursuant to Civ. R. 41(A) and Civ. R. 41(C). In effect, the Reynolds argue that whether or not the Reynolds' claim was compulsory, Civ. R. 41 allows for the voluntary dismissal of claims without prejudice and makes no distinction between permissive and compulsory counterclaims.
 {¶ 25} Civ. R. 41 governs the dismissal of actions. Civ. R. 41(A)(1) governs situations where voluntary dismissals by a plaintiff are permitted. Under Civ. R. 41(A)(1)(a), a plaintiff may file a notice of dismissal if trial has not commenced and the defendant has not asserted a counterclaim which must be tried within that action. Civ. R. 41(A)(1)(b) allows for voluntary dismissals by the plaintiff when all parties to the action agree to the dismissal. Civ. R. 41(A)(1) dismissals are typically without prejudice, except where the plaintiff has once before dismissed the same action, *Page 10 
whereupon the dismissal is treated as with prejudice.
 {¶ 26} Civ. R. 41(A)(2) governs all other situations not specified in Civ. R. 41(A)(1) where dismissals must be by order of the court. If a dismissal is granted under Civ. R. 41(A)(2) it is "upon such terms and conditions as the court deems proper." Additionally, Civ. R. 41(A)(2) states that "[u]nless otherwise specified in the [court's] order, a dismissal under division (A)(2) is without prejudice."
 {¶ 27} Civ. R. 41(C) governs the dismissal of counterclaims, cross-claims, and third-party claims. Civ. R. 41(C) states that the principles applicable to the other parts of Civ. R. 41 are applicable to the matters governed by Civ. R. 41(C).
 {¶ 28} The staff notes to Civ. R. 41 explain:
 {¶ 29} "[The] rule provides that voluntary or involuntary dismissal, depending upon the particular circumstances, may be with or without prejudice. If the dismissal is with prejudice, the dismissed action in effect has been adjudicated upon the merits, and an action based on or including the same claim may not be retried. In many circumstances in granting a dismissal with or without prejudice under Rule 41, the court must exercise its sound discretion."
 {¶ 30} 1970 Staff Notes to Civ. R. 41.
 {¶ 31} Indeed, a dismissal pursuant to Civ. R. 41 is within the sound discretion of the trial court and will not be reversed unless upon a showing of an abuse of discretion. Douthitt v. Garrison (1981),3 Ohio App.3d 254, 256, 444 N.E.2d 1068.
 {¶ 32} Here we have a situation appearing to fall within the ambit of Civ. R. 41(A)(2) and Civ. R. 41(C), dismissal of a defendant's counterclaim by order of the court. Civ. R. 41(A)(2) specifies that ordinarily, a dismissal under this section is without *Page 11 
prejudice. However, we disagree with the Reynolds that Civ. R. 41 allows for the voluntary dismissal of compulsory counterclaims without prejudice. Civ. R. 13(A) explicitly bars the later filing of compulsory counterclaims which were not set forth and adjudicated in the original suit. Rettig Enterprises, Inc. v. Koehler (1994), 68 Ohio St.3d 274,278, 626 N.E.2d 99. Civ. R. 41 does not negate the requirements of Civ. R. 13(A). See Stern v. Whitlach (1993), 91 Ohio App.3d 32, 36,631 N.E.2d 680 (holding, in effect, that a voluntary dismissal without prejudice, pursuant to Civ. R. 41(A), of compulsory counterclaims, was a dismissal with prejudice.) Generally speaking, a compulsory counterclaim dismissed pursuant to Civ. R. 41 should be with prejudice.[3]
Accordingly, we must analyze whether the Reynolds' counterclaim is compulsory.
 {¶ 33} Civ. R. 13(A) states as follows: *Page 12 
 {¶ 34} "(A) Compulsory counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13."
 {¶ 35} In Geagu Truck Implement Co. v. Juskiewicz (1984),9 Ohio St.3d 12, 457 N.E.2d 827, the Ohio Supreme Court set forth a two-pronged test for applying Civ. R. 13(A): "(1) does the claim exist at the time of serving the pleading . . .; and (2) does the claim arise out of the transaction or occurrence that is the subject matter of the opposing claim." Geagu, 9 Ohio St.3d at 14.
 {¶ 36} The Reynolds' counterclaim alleged that SNB violated the Fair Debt Collection Practices Act by suing them for an amount greater than what they could possibly owe. The Reynolds served their answer with counterclaim subsequent to being sued, thus there is no question that the Reynolds' claim existed at the time they served their answer on SNB. The only question that remains to be resolved is whether the Reynolds' claim arises out of the "transaction or occurrence that is the subject matter of the opposing claim."
 {¶ 37} Courts use the "logical relation" test to determine whether a claim meets *Page 13 
this requirement. Under this test "[a] compulsory counterclaim is one which `is logically related to the opposing party's claim where separate trials on each of their respective claims would involve substantial duplication of effort and time by the parties and the courts.'"Rettig, supra, 68 Ohio St.3d 274, 278 (quoting Staff Notes (1970) to Civ. R. 13.)
 {¶ 38} We conclude that the Reynolds' claim is logically related to SNB's original action to recover a deficiency. Many of the same facts and evidence that would be required to prove SNB's claim to recover a deficiency would be useful to the Reynolds in proving that SNB violated the Fair Debt Collections Practices Act in attempting to collect that deficiency. SNB used its collections manager as a witness in an attempt to prove its claim for a deficiency. It seems likely that the Reynolds might also call Ms. Burnett in order to prove their claim regarding alleged illegality in collections procedures. Thus, having satisfied both prongs of the Civ. R. 13(A) analysis, the Reynolds' counterclaim was compulsory.
 {¶ 39} Because the Reynolds' counterclaim was compulsory, it was an abuse of discretion for the trial court to dismiss it without prejudice. The Supreme Court of Ohio has repeatedly voiced its desire to avoid piecemeal litigation in our court system. See Denham v. New Carlise
(1999), 86 Ohio St.3d 594, 597, 716 N.E.2d 184 (citing Gen. Elec. SupplyCo. v. Warden Elec, Inc. (1988), 38 Ohio St.3d 378, 380, 381-382,528 N.E.2d 195, 197-198.) We share this desire to avoid a multiplicity of lawsuits. Allowing the Reynolds to reassert their claim would run afoul of this important principle and would circumvent the clear requirements of Civ. R. 13(A).
 {¶ 40} In conclusion, the trial court committed no abuse of discretion in refusing *Page 14 
to allow certain testimony by SNB's collection manager due to a lack of foundation. However, failing to dismiss the compulsory counterclaim with prejudice was error. Judgment in favor of Appellees affirmed, but remanded for entry of order dismissing counterclaim with prejudice.
BROGAN, J. and GRADY, J., concur.
[1] In its pre-trial report, filed February 8, 2007, SNB revealed that it would call Pam Burnett and announced that it did not intend to introduce expert testimony at trial.
[2] It must be noted that here the Court was discussing what would be necessary for a corporate officer or shareholder to testify as to value of corporate property. However, we feel that the Court's language is generally applicable to the issue of non-expert testimony regarding opinion of value.
[3] We note one jurisdiction allows a defendant to re-file a compulsory counterclaim within one year of voluntarily dismissing it. See Linn v. Nations Bank (2000), 341 Ark. 57, 65, 14 S.W.3d 500. However, Ohio Civ. R. 41, modeled after its Federal counterpart (seeAbbyshire Constr. Co. v. Ohio Civil Rights Comm., 38 Ohio App.2d 125,127, 316 N.E.2d 893), is different from Arkansas Civ. R. 41, which "differs significantly from FRCP 41." Reporter's Notes to Arkansas Rule 41. We decline to follow Arkansas's approach. *Page 1