[Cite as *State v. Ndao*, 2017-Ohio-8422.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27368 |
| | : | |
| v. | : | Trial Court Case No. 2015-CR-3807 |
| | : | |
| GORGUI S. NDAO | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of November, 2017.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ALICE B. PETERS, Atty. Reg. No. 0093945, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

GEORGE A. KATCHMER, Atty. Reg. No. 0005031, 1886 Brock Road N.E., Bloomingburg, Ohio 43106
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Gorgui Ndao appeals from his conviction for tampering with records. He contends that the State did not present evidence sufficient to support the conviction and that the conviction is not supported by the weight of the evidence. Ndao further contends that the trial court abused its discretion by permitting the State to present opinion testimony from witnesses not qualified as experts.

{¶ 2} We conclude that there is evidence in this record upon which a juror could find the essential elements of the offense to have been proven beyond a reasonable doubt. We further conclude that the jury did not lose its way in convicting Ndao. Finally, we find no abuse of discretion with regard to the trial court's decision to permit the opinion testimony provided by two witnesses who were not qualified as experts. Accordingly, the judgment of the trial court is affirmed.

## I. Facts and Procedural History

{¶ 3} On October 31, 2015, Ndao attempted to renew his driver's license at the Bureau of Motor Vehicles ("BMV") office located on Main Street in Dayton. Since Ndao is a non-citizen of the United States, he was required to provide additional identification, including his permanent resident card. After determining that Ndao's permanent resident card was not valid, the BMV forwarded all of his documentation and identification to the investigative arm of the BMV.

{¶ 4} On March 10, 2016, Ndao was indicted on one count of tampering with records (kept by government entity) in violation of R.C. 2913.42(A)(2). A jury trial was conducted in October 2016. At trial, the State presented the testimony of Theresa Maki,

a clerk at the BMV who assisted Ndao when he attempted to renew his license. According to Maki, she took an expired license from Ndao and used it to pull up his information on her computer. Because he is a non-citizen, the computer indicated that Ndao would also need to present his Social Security card as well as his permanent resident card, also known as an I-551.[1] Ndao filled out, and signed, a license application form. Maki, per standard policy, took all of his forms of identification, as well as the application, to her manager. The manager raised a concern regarding the permanent resident card, and did not approve the application. She told Maki to continue processing the license request, and to mark it for investigative review. Maki then returned to Ndao where she asked him to read statements on a computer screen and then sign the screen page. Ndao signed the computer screen and paid his fee. Maki then took the application form, scanned it, and forwarded it to the BMV's central office in Columbus. When she scanned the document, she checked it for investigative review. She then took a photograph of Ndao and generated a new driver's license. The documents, social security card, permanent resident card, as well as the new and expired licenses were then given to her manager.

{¶ 5} Amanda Banks, Maki's supervisor and officer manager at the BMV, indicated that she has reviewed hundreds of immigration documents as part of her job duties. She testified that she receives training regarding the security features of valid documents every two years, and that she has seen fake documents in the past. Banks indicated that Ndao's Social Security Card and expired driver's license appeared to be valid. However, she had numerous concerns about the permanent resident card. Specifically,

---

[1] This card is also referred to as a "Green Card."

she noted that instead of the phrase "Given Name," the card has "Give Name." She also noted misspellings on the card including "expirex" rather than "expire" and "resident" is improperly spelled "Ressident." Banks also noted that an eagle and a hologram on the front of the card are not properly reflective. She stated that the back of the card does not have the appropriate images of State flags nor past presidents. According to Banks, she took all of Ndao's documents from Maki, and she then informed Ndao that an investigator would contact him. All of the forms and documents were turned over to the BMV investigations unit.

**{¶ 6}** BMV investigator Elizabeth Cress testified that she was assigned to investigate Ndao's case. She testified that she has handled over 25 fraud cases. According to Cress, Ndao's permanent resident card had numerous irregularities. She stated that his picture should be bigger, and that the photo is the wrong color. Cress noted that some printing that should be raised and tactile is not. The eagle on the front of the card does not properly change color from gold to green when the card is moved. She noted the same misspellings as Banks. She also noted that some words that should be capitalized are not. Cress also noted that Ndao's name is printed on an angle rather than straight across. On the back of the card, Cress identified more problems. Specifically, the "I-551" was cut off, "mailbox" was misspelled as "mailbos," and miniature pictures of past presidents and state flags were not properly visible. Finally, Cress testified that the card was not a legitimate document and that it was not appropriate to present it for verification in order to obtain a driver's license.

**{¶ 7}** Kevin O'Neill also testified at trial. O'Neill is an immigration officer with the fraud detection arm of the United States Citizenship and Immigration Service ("USCIS").

According to O'Neill, the fraud detection unit is a National Security Directorate of USCIS, and USCIS is a department of the Department of Homeland Security. O'Neill testified that permanent resident cards are issued by USCIS, and that he has undergone in-depth training regarding the security features imbedded in permanent resident cards. He testified that he has been involved in the review of "hundreds, maybe thousands" of permanent resident cards and associated documents, and that he has found 200 to 250 that were not valid. O'Neill testified that he reviewed Ndao's card, with this review including the use of a black light and a loupe, or magnifying glass. O'Neill found the same problems with the card as did Cress and Banks. He further noted that Ndao's card, which purported to have been issued in 2015, had an incorrect number for a card issued that year. He further noted that the fingerprint on the card was not done correctly, stating that it was only a "partial roll" rather than the required "full role." O'Neill stated that a hologram on the front of the card appeared to be a copy of the correct hologram at a point when it was fluoresced because it does not appear and disappear properly when the card is rotated. O'Neill noted that the back of the card should have miniature images of past presidents and all fifty state flags. He testified that on a valid card, the features of each president and flag are apparent under magnification, and that they are perfectly detailed. However, Ndao's card only has what appear to be silhouettes of the flags and presidents. O'Neill testified that permanent resident cards are assigned an "A" or "alien" number on the front. The number on Ndao's card was registered to a different individual in the USCIS Central Index System. Further, Ndao had a number associated with him that indicated he had been permitted to enter the country to work temporarily, but not to seek permanent residency. The number would have expired by 1996, and the Central Index

System contained no information on Ndao after 1996. O'Neill testified that the card was not issued by USCIS.

{¶ 8} Following trial, Ndao was convicted of the offense as charged in the indictment. The trial court sentenced Ndao to community control sanctions for a period not to exceed five years. Ndao filed a timely appeal.

## II. Sufficiency and Weight of the Evidence

{¶ 9} Ndao's first and second assignments of error state as follows:

THE APPELLANT'S CONVICTION IS BASED UPON INSUFFICIENT EVIDENCE

THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶ 10} Ndao argues that the State did not present evidence sufficient to support his conviction and that the conviction is against the weight of the evidence. Specifically, he contends that the State failed to prove that he had the requisite knowledge required for a violation of R.C. 2913.42(A)(2).

{¶ 11} When a criminal defendant challenges the sufficiency of the evidence, he or she disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed,

would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.) *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), at paragraph two of the syllabus.

{¶ 12} In contrast, when a defendant contests the weight of the evidence, the argument "challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. "Here the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 13} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11; *accord State v. Robinson*, 2d Dist. Montgomery No. 26441, 2015-Ohio-1167, ¶ 17. As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency."

(Citations omitted.)   *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 14} "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 15} Ndao was convicted of violating R.C. 2913.42(A)(2) which states that "[n]o person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall * * * [u]tter any writing or record, knowing it to have been tampered with as provided in division (A)(1) of this section."   R.C. 2913.42(A)(1) prohibits a person from falsifying, destroying, removing, concealing, altering, defacing, or mutilating any writing, computer software, data, or record.   "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist.   When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact."   R.C. 2901.22(B).

{¶ 16} As stated, Ndao argues that the State failed to prove that he acted with

knowledge that his permanent resident card was invalid when he used it to obtain his driver's license. In support, he claims that he has been in the United States for 27 years without any notification by USCIS that his status had changed. He also claims that his Social Security card and expired driver's license were valid which demonstrates that previous license renewals occurred with "presumably the same vetting process."

{¶ 17} "Commonly, there is no direct evidence of a defendant's state of mind so the state must rely on circumstantial evidence to satisfy this element of its case. A defendant's state of mind may be inferred from the totality of the surrounding circumstances." *State v. Rodano*, 2017-Ohio-1034, N.E.3d, ¶ 43 (8th Dist.), quoting *In re Horton*, 4th Dist. Adams No. 04CA794, 2005-Ohio-3502, ¶ 23. In Ohio, it is well-established that "a defendant may be convicted solely on the basis of circumstantial evidence." *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988). "Circumstantial evidence and direct evidence inherently possess the same probative value." *Jenks*, paragraph one of the syllabus. "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * *' " *Nicely*, at 150, 529 N.E.2d 1236, quoting *Black's Law Dictionary* (5 Ed. 1979) 221.

{¶ 18} The unrebutted evidence presented at trial demonstrates that the card presented by Ndao had at least sixteen (or more if each individual State flag and past president miniature is added) identifiable errors on its face and back. Some of the errors involved imbedded security features, while some involved simple errors of spelling and capitalization. In any event, three separate people, familiar with such cards, testified that

the card was not valid. O'Neill also testified that USCIS did not issue the card. The evidence further demonstrates that Ndao has not had contact with USCIS since 1996. However, he was in possession of a permanent resident card purported to be issued by USCIS in 2015. Finally, he presented the card in an attempt to renew his expired driver's license.

{¶ 19} Viewing the evidence presented at trial in a light most favorable to the prosecution, we conclude that a juror could have found beyond a reasonable doubt that Ndao committed the crime of tampering with records in violation of R.C. 2913.42(A)(2). Thus, there was sufficient evidence to support the conviction. We further conclude that the trier of fact did not create a manifest miscarriage of justice so as to require a new trial.

{¶ 20} Accordingly, the first and second assignments of error are overruled.

### III. Opinion Testimony

{¶ 21} The third assignment of error asserted by Ndao is as follows:

THE COURT ERRED IN PERMITTING NON-EXPERT WITNESSES

TO GIVE EXPERT OPINIONS

{¶ 22} Ndao contends that the trial court violated Evid.R. 702 and improperly permitted O'Neill and Cress to present expert opinion testimony despite the fact that they were not qualified, nor accepted by the trial court, as expert witnesses.

{¶ 23} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). A trial court abuses its discretion when it makes a decision that is unreasonable, arbitrary, or unconscionable. *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013–

Ohio–5463, ¶ 24, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 24}** Contrary to Ndao's assertion, the testimony provided by O'Neill and Cress was not offered as expert testimony. Thus, Evid.R. 702 was not implicated. Evid.R. 701 governs opinion testimony by lay witnesses and provides that "[i]f the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

**{¶ 25}** We discussed lay opinion in *Hetzer-Young v. Elano Corp.*, 2016-Ohio-3356, 66 N.E.3d 234 (2d Dist.), wherein we stated:

> The line between expert testimony under Evid.R. 702 and lay opinion testimony under Evid.R. 701 is not always easy to draw. [*Sec. Natl. Bank & Trust Co. v. Reynolds*, 2d Dist. Greene No. 2007 CA 66, 2008-Ohio-4145,] at ¶ 19. However, as recognized by the Supreme Court of Ohio, courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702. *State v. McKee*, 91 Ohio St.3d 292, 296, 744 N.E.2d 737 (2001). "Although these cases are of a technical nature in that they allow lay opinion testimony on a subject outside the realm of common knowledge, they still fall within the ambit of the rule's requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue. These cases are not based on specialized

knowledge within the scope of Evid.R. 702, but rather are based upon a layperson's personal knowledge and experience." (Footnote omitted.) *Id.* at 296–297, 744 N.E.2d 737; *see also State v. Jones*, 2015-Ohio-4116, 43 N.E.3d 833, ¶ 107 (2d Dist.) (police detective could testify about typical behavior of children in child abuse cases based on his training and experience in such cases); *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 77.

*Id.* at ¶ 43.

**{¶ 26}** This holding has been applied in a case involving police identification of anhydrous ammonia, a chemical used to manufacture methamphetamine. *State v. Vogel*, 3rd Dist. Crawford No. 3-05-10, 2005-Ohio-5757, ¶ 11. Therein, the Third Appellate District held that the State is "entitled to establish the identity of a drug through circumstantial evidence as long as a lay witness has firsthand knowledge and a 'reasonable basis—grounded either in experience or specialized knowledge—for arriving at the opinion expressed.' " *Id.* This court has applied Evid.R. 701 to a case wherein an officer presented opinion testimony about a hydraulic press found in a garage that contained heroin, and the typical use of such a press in shaping heroin. *State v. Dillard*, 173 Ohio App.3d 373, 2007-Ohio-5651, 878 N.E.2d 694, ¶ 91-93 (2d Dist.). We found such was admissible as lay opinion testimony at trial for possession of heroin where the officer's opinions are based on the officer's own perceptions and are helpful to the factfinder. *Id.*

**{¶ 27}** Here, both Cress and O'Neill had experience dealing with immigration documents, including both valid and fraudulent permanent resident cards. They both

testified based upon their visual inspection of Ndao's card that his card had many irregularities that are not consistent with valid cards. Further, O'Neill testified that, based upon his experience and training, the irregularities caused him to believe that the card was not issued by USCIS.

{¶ 28} We conclude that the trial court did not abuse its discretion by permitting the testimony of either Cress or O'Neill. Accordingly, the third assignment of error is overruled.

## IV. Conclusion

{¶ 29} Ndao's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, P.J. and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Alice B. Peters
George A. Katchmer
Hon. Mary Lynn Wiseman