[Cite as *State v. Carson*, 2018-Ohio-4352.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                                    :
                                                 :
        Plaintiff-Appellee                       :     Appellate Case No. 27566
                                                 :
v.                                               :     Trial Court Case No. 2016-CRB-3935
                                                 :
ANGELA R. CARSON                                 :     (Criminal Appeal from
                                                 :     Municipal Court)
        Defendant-Appellant                      :
                                                 :

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 26th day of October, 2018.

. . . . . . . . . . .

AMY B. MUSTO, Atty. Reg. No. 71514 and ANDREW D. SEXTON, Atty. Reg. No. 0070892, Dayton Prosecutors Office, 335 W. Third Street, Room 390, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellee


CARLO MCGINNIS, Atty. Reg. No. 0019540, 55 Park Avenue, Oakwood, Ohio 45419
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Angela R. Carson appeals her conviction for two counts of criminal damaging, in violation of R.C. 2909.06(A)(1), misdemeanors of the second degree. Carson filed a timely notice of appeal with this Court on April 24, 2017.

{¶ 2} The incident which forms the basis of the instant appeal occurred late at night on June 10, 2016, and during the early morning hours of June 11, 2016, at the Somewhere Lounge located in Dayton, Ohio. Kayleigh Mullins testified that she was bartending that night, and that at approximately 10:00 p.m., she observed an individual named Adam Manning enter the bar with a female. Mullins testified that she was well acquainted with Manning as he was a patron of the bar. Thereafter, at approximately 12:30 a.m., Mullins testified that she observed the defendant, Carson, enter the bar along with a female friend. Mullins further testified that she knew Carson as another patron of the bar and was aware that Carson was also Manning's ex-girlfriend.

{¶ 3} Thereafter, Carson, who was already apparently intoxicated, began making vulgar comments directed at Manning. At some point, Manning and his female friend got up and went outside in order to smoke cigarettes. Mullins testified that she took a break and followed Manning outside in order to smoke. Mullins testified that when they began to walk back into the bar, Carson exited the bar and started calling Manning names. Mullins testified that she got in between Manning and Carson in order to defuse the situation. Upon becoming aware of the altercation, Anna Prince, the manager of the bar, came outside and was able to get Manning and his friend to go back into the bar. Prince also directed Mullins to go back inside the bar and resume her duties. Prince testified that she then told Carson to leave the premises.

{¶ 4} Prince testified that Carson eventually left and walked out into the parking lot in front of the bar. While Prince was watching her, Carson walked over to a pickup truck owned by Christopher Kinsler, another bar patron, and began scraping away the paint on his truck ostensibly with a car or house key, an act known as "keying." Prince immediately went back into the bar and directed Mullins to call the police because Carson was "keying" the truck. Prince initially thought the truck belonged to Manning and not Kinsler because both men owned similar looking silver Chevy pickup trucks.

{¶ 5} After going outside to observe the damage, Manning observed that his truck had also been "keyed" in a similar manner. Manning testified that he also observed Carson and another individual walking away from the scene through another section of the parking lot. Kinsler testified that the damage to his truck similar to the damage to Manning's truck, and that the vehicles were parked only two spaces apart. Prince also testified that both trucks appeared to have sustained similar damage caused by the same implement. Significantly, Manning testified that the "keying" damage to his vehicle did not exist prior to his verbal altercation with Carson.

{¶ 6} Dayton Police Officer Seth Gabbard was dispatched to the Somewhere Lounge on a criminal damaging complaint. Mullins testified that Officer Gabbard arrived at the bar at approximately 1:45 a.m. Officer Gabbard testified that, upon his arrival, he interviewed both Manning and Kinsler regarding the damage done to their trucks. Officer Gabbard testified that the key damage to the trucks was similar and appeared to him that the damage was likely caused by the same person.

{¶ 7} On June 13, 2016, Carson was charged by way of complaint in Dayton Municipal Court with two counts of criminal damaging. At her arraignment on June 23,

2016, Carson pled not guilty. A pretrial conference was scheduled for July 13, 2016, and a second pretrial conference was held on July 18, 2016. A bench trial was scheduled for August 15, 2016, and on August 5, 2016, Carson filed a jury demand. A jury trial was scheduled for September 22, 2016.

{¶ 8} On September 21, 2016, Carson filed a "Waiver of Time for Trial Pursuant to R.C. 2945.71" and requested a continuance. The continuance was granted, and after three more continuances, a jury trial was held on January 19, 2017. Carson was found guilty of both counts of criminal damaging and sentenced to 90 days in jail on each count, suspended. The trial court also sentenced Carson to community control sanctions, including basic supervised probation for five years and an aggregate term of 90 days of electronic home detention with work release. Carson was also ordered to complete NOVA and MAD and to pay restitution in the amount of $2,987.37, in monthly installments of $50.

{¶ 9} Initially, we note that Carson's first appointed counsel filed a brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed. 2d 493 (1967), in which he argued that he could "find no meritorious issues having arguable merit." However, appointed counsel set forth two potential assignments of error regarding evidentiary issues and Carson's right to speedy trial. In a decision and entry issued on February 2, 2018, we found that appointed counsel had in fact raised at least one non-frivolous issue in his *Anders* brief. Therefore, we set aside the *Anders* brief and appointed new appellate counsel to represent Carson. The instant appeal followed.

{¶ 10} Carson's first assignment of error is as follows:

THE TRIAL COURT COMMITTED ERROR IN ALLOWING OPINION

TESTIMONY BY WITNESSES THAT WERE NOT EXPERTS.

{¶ 11} In her first assignment, Carson contends that the trial court erred when it allowed Prince, Kinsler, Mullins, and Officer Gabbard to render opinion testimony regarding the similarity between the damage done to both trucks. Specifically, Carson argues that it was improper for the trial court to allow Prince to testify that she believed Carson "keyed" Manning's truck after mistakenly "keying" Kinsler's truck. Carson argues that it was error for the trial court to allow Kinsler to testify, over objection, that it was his opinion that the same person (Carson) "with the same aggression perpetuated matching damage to both trucks." Carson also argues that it was improper for the trial court to allow Mullins and Officer Gabbard to testify that the scratches on both trucks were similar in appearance.

{¶ 12} Evid.R. 701 governs opinion testimony by lay witnesses and provides that such testimony "is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Under Evid.R. 701, lay opinion testimony must be "rationally based on the perception of the witness. Perception connotes sense: visual, auditory, olfactory, etc. Thus, opinion testimony under Evid.R. 701 must be based on firsthand, sensory based knowledge." *Sec. Natl. Bank & Trust Co. v. Reynolds*, 2d Dist. Greene No. 2007 CA 66, 2008-Ohio-4145, ¶ 17.

{¶ 13} The line between expert testimony under Evid.R. 702 and lay opinion testimony under Evid.R. 701 is not always easy to draw. *Id*. at ¶ 19. However, as recognized by the Supreme Court of Ohio, courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be

qualified under Evid.R. 702. *State v. McKee*, 91 Ohio St.3d 292, 296, 744 N.E.2d 737 (2001). "Although these cases are of a technical nature in that they allow lay opinion testimony on a subject outside the realm of common knowledge, they still fall within the ambit of the rule's requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue. These cases are not based on specialized knowledge within the scope of Evid.R. 702, but rather are based upon a layperson's personal knowledge and experience." (Footnote omitted.) *Id.* at 296-297; *see also State v. Jones*, 2015-Ohio-4116, 43 N.E.3d 833, ¶ 107 (2d Dist.) (police detective could testify about typical behavior of children in child abuse cases based on his training and experience in such cases); *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 77.

{¶ 14} The trial court has "considerable discretion in admitting the opinion testimony of lay witnesses." (Citation omitted.) *State v. Marshall*, 191 Ohio App.3d 444, 2010-Ohio-5160, 946 N.E.2d 762, ¶ 43 (2d Dist.). An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 15} Initially, we note that Prince testified that she directly observed Carson "key" Kinsler's truck, which was very similar to Manning's truck. After she witnessed Carson "key" Kinsler's truck, Prince went back inside the bar and told Mullins to call the police. Prince also mistakenly told Manning that Carson was damaging what she thought was his truck. Prince, Mullins, Kinsler, Manning, and Officer Gabbard all had an opportunity to view the damage done to both trucks, and they all testified that the damage done to both trucks was similar in appearance. These opinions were rationally based upon their

own observations/perceptions and would be helpful to a determination regarding whether Carson was the individual who "keyed" both vehicles. This testimony did not contain any scientific conclusions or specialized knowledge. Simply put, the testimony of the State's witnesses primarily consisted of their first hand opinions regarding the nature and appearance of the scratch marks on the trucks.

{¶ 16} We agree, however, that the following question and answer from Kinsler should have been excluded, because it sought to answer the very question as to the existence or non-existence of an ultimate fact to be determined by the jury, i.e. did Carson also "key" Manning's truck as well:

> The State: Ok. And you were able to view the damage to Manning's vehicle that happened that evening?
>
> Kinsler: Yes.
>
> The State: And was it similar to the damage caused to your vehicle?
>
> A: Yes.
>
> Q: *Did it appear to be done by the same person*?
>
> A: *Could have been.*
>
> Defense Counsel: Objection, Your Honor. Speculation.
>
> Trial Court: I am going to overrule.

(Emphasis added.) In our view, any reasonable inference to be drawn from the facts was to be drawn by the jurors, not Kinsler. However, given the entirety of the record and considering all of the facts adduced, we cannot say that this response standing alone prejudiced Carson. On these facts, the jury could have readily and easily drawn the same inference made by Kinsler. Thus, the error was harmless.

{¶ 17} Accordingly, we conclude that the majority of the testimony of Prince, Mullins, Kinsler, Manning, and Officer Gabbard was properly admitted lay testimony under Evid.R. 701, because the testimony was related to their personal observations and was helpful to the determination of whether Carson "keyed" both trucks. At a minimum, it was a reasonable inference to draw given their firsthand observations, and any error in admitting their testimony on this record would be harmless.

{¶ 18} Carson's first assignment of error is overruled.

{¶ 19} Because they are interrelated, Carson's second and third assignments will be discussed together as follows:

THE CONVICTIONS OF CRIMINAL DAMAGING FOR COUNT ONE AND COUNT TWO WERE WITHOUT SUFFICIENT EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

TRIAL COURT ERRONEOUSLY OVERRULED APPELLANT'S CRIMINAL RULE 29 MOTION FOR DIRECTED VERDICT WHERE NO EVIDENCE WAS PRESENTED BY [THE] STATE TO PROVE [THE] ESSENTIAL ELEMENTS OF CRIMINAL DAMAGING.

{¶ 20} In her second assignment, Carson argues that her convictions for criminal damaging were not supported by sufficient evidence and were against the manifest weight of the evidence. In her third assignment, Carson contends that the trial court erred when it overruled her Crim.R. 29 motion for acquittal made at the close of the State's evidence.

{¶ 21} Although the State does not raise the issue, we note that the record fails to establish that Carson renewed her Crim.R. 29 motion for acquittal at the close of all the

evidence in her jury trial. Here, Carson moved for acquittal at the close of the State's case-in-chief, the trial court denied the motion, and defense counsel then presented the testimony of one witness for the defense. After resting, the printed record provided to this Court does not indicate that Carson renewed her Crim.R. 29 motion for acquittal. Carson has therefore failed to preserve her insufficiency argument by not renewing it at the close of evidence. *See State v. Zimpfer*, 2d Dist. Montgomery No. 26062, 2014-Ohio-4401, ¶ 42 (appellant preserved his insufficiency argument by making an unsuccessful Crim.R. 29 motion for acquittal at the close of evidence at trial). It is generally accepted in Ohio that if counsel fails to make and renew a Crim.R. 29 motion during a jury trial, the issue of sufficiency is waived on appeal. *State v. Richardson*, 75 N.E.3d 831, 2016-Ohio-8081, ¶ 16 (2d Dist.). However, even if Carson had renewed her Crim.R. 29 motion, we conclude that her argument that her convictions for criminal damaging were based upon insufficient evidence lacks merit.

{¶ 22} Crim.R. 29(A) states that a court shall order an entry of judgment of acquittal if the evidence is insufficient to sustain a conviction for the charged offense. "Reviewing the denial of a Crim.R. 29 motion therefore requires an appellate court to use the same standard as is used to review a sufficiency of the evidence claim." *State v. Witcher*, 6th Dist. Lucas No. L-06-1039, 2007-Ohio-3960, ¶ 20. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " (Citations omitted). *State v. Crowley*, 2d Dist. Clark No. 2007-CA-99, 2008-Ohio-4636, ¶ 12.

{¶ 23} "A challenge to the sufficiency of the evidence differs from a challenge to

the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 69.   "A claim that a jury verdict is against the manifest weight of the evidence involves a different test.   'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.   The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " (Citations omitted.) *Id.* at ¶ 71.

{¶ 24} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).   "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility.   The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 25} This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 26} Evidence presented to prove the elements of a crime may be direct or

circumstantial, and both have the same probative value. *State v. Ayers*, 194 Ohio App.3d 812, 2011-Ohio-3500, 958 N.E.2d 222, ¶ 11 (2d Dist.). Consequently, a defendant may be convicted solely on the basis of circumstantial evidence. *State v. Nicely*, 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988). In fact, we have noted that circumstantial evidence is often more persuasive than direct evidence. *State v. Reed*, 155 Ohio App.3d 435, 2003-Ohio-6536, 801 N.E.2d 862, ¶ 56 (2d Dist.). As stated by the Supreme Court of Ohio, "circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence." *State v. Jackson*, 57 Ohio St.3d 29, 38, 565 N.E.2d 549 (1991).

{¶ 27} R.C. 2909.06(A)(1) provides: "No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent: (1) Knowingly, by any means[.]" "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 28} In the instant case, Carson does not dispute that the damage to Kinsler's and Manning's trucks constituted harm to property. Rather, Carson argues that the weight of the evidence failed to establish that she was the individual who damaged the trucks. Carson also argues that the evidence adduced at trial failed to establish that she damaged Manning's truck without his consent.

{¶ 29} In the instant case, the jury was presented with both direct and circumstantial evidence of Carson's guilt. With respect to the direct evidence adduced at trial, Prince testified that she personally observed Carson walk over to Kinsler's truck and use a key to scratch the paint on the sides and hood of the truck. Kinsler testified

that his truck had not been "keyed" prior to his entering the bar. Kinsler learned his truck had been scratched only 20 minutes later when he went outside in response to Prince's suggestion that Carson was "keying" what Prince believed to be Manning's truck. Kinsler also testified that he did not give Carson permission to damage his truck.

{¶ 30} Regarding the damage done to Manning's vehicle, the evidence adduced, both direct and circumstantial, supported Carson's conviction for criminal damaging. Specifically, evidence was adduced which established that immediately prior to the "keying" of the trucks, Carson had initiated a verbal altercation with Manning, who had recently ended a relationship with her. Prince had just witnessed Carson "key" Kinsler's truck, and Manning's truck was parked only two spaces away. Prince, Mullins, Kinsler, Manning, and Officer Gabbard all had an opportunity to view the damage done to both trucks, and they all testified that the damage done to both trucks was similar in appearance and pattern. Manning testified that, other than some distinct preexisting damage to the hood of his truck, the truck was otherwise undamaged prior to Carson's appearance at the bar. Although Manning did not specifically testify that Carson lacked consent to "key" his truck, the circumstantial evidence adduced at trial clearly supported that Carson did not have Manning's consent to damage his vehicle. *See State v. Drane*, 2d Dist. Montgomery No. 21626, 2007-Ohio-2591, ¶ 14-15 (finding that where the State properly established that appellant acted "without consent" through circumstantial evidence in a conviction for criminal damaging, the trial court did not err in overruling her motion for an acquittal). Therefore, we find that Carson's convictions for criminal damaging were supported by sufficient evidence.

{¶ 31} Having reviewed the record, we find no merit in Carson's manifest-weight

challenge. It is well-settled that evaluating witness credibility is primarily for the trier of fact. *State v. Benton*, 2d Dist. Miami No. 2010-CA-27, 2012-Ohio-4080, ¶ 7. Here, the jury quite reasonably credited the extensive testimony provided by all of the State's witnesses, evaluated said evidence and all reasonable inferences related to the elements of the offenses, and found Carson guilty. Having reviewed the entire record, we cannot clearly find that the evidence weighed heavily against conviction, or that a manifest miscarriage of justice occurred.

**{¶ 32}** Carson's second and third assignments of error are overruled.

**{¶ 33}** Carson's fourth assignment of error is as follows:

THE TRIAL COURT ERRED THAT [sic] APPELLANT WAS DENIED A RIGHT TO A SPEEDY TRIAL AS GUARANTEED BY [THE] SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND BY SECTION 10, ARTICLE 1, OHIO CONSTITUTION.

**{¶ 34}** In her fourth assignment, Carson argues that her right to a speedy trial was violated "by virtue of the lengthy span of time between service of the Complaint on June 17, 2016, and the trial [held] on January 19, 2017." Therefore, Carson contends that the record fails to establish that she was brought to trial within a reasonable time.

**{¶ 35}** As this Court has noted:

The right to a speedy trial is guaranteed by the United States and Ohio Constitutions. *State v. Adams* (1989), 43 Ohio St.3d 67, 68, 538 N.E.2d 1025. The speedy trial provisions of the Ohio statutes must be strictly construed against the State. *Brecksville v. Cook* (1996), 75 Ohio

St.3d 53, 55, 661 N.E.2d 706. A defendant can establish a prima facie case for a speedy trial violation by demonstrating that the trial was held past the time limit set by statute for the crime with which the defendant is charged. *State v. Price* (1997), 122 Ohio App.3d 65, 68, 701 N.E.2d 41. If the defendant can make this showing, the burden shifts to the State to establish that some exception[s] applied to toll the time and to make the trial timely. *Id.* If the State does not meet its burden, the defendant must be discharged. R.C. § 2945.73. See, also, *State v. Coatoam* (1975), 45 Ohio App.2d 183, 185-186, 341 N.E.2d 635.

*State v. Gray*, 2d Dist. Montgomery No. 20980, 2007-Ohio-5449, ¶ 15.

{¶ 36} R.C. 2945.71 provides in relevant part:

\* \* \*

(B) Subject to division (D) of this section, a person against whom a charge of misdemeanor, other than a minor misdemeanor, is pending in a court of record, shall be brought to trial as follows:

\* \* \*

(2) Within ninety days after the person's arrest or the service of summons, if the offense charged is a misdemeanor of the first or second degree, or other misdemeanor for which the maximum penalty is imprisonment for more than sixty days.

{¶ 37} The docket reflects that Carson was served with her summons on June 17, 2016. After 27 days elapsed, she requested and was granted a continuance on July 14, 2016, and a second pretrial was scheduled for July 28, 2016. Even without analyzing

the effect of Carson's August 5, 2016 jury demand, Carson filed a speedy trial waiver on September 22, 2016, at which point only 83 days of speedy trial time had elapsed (27 days from June 17, 2016 until July 14, 2016, plus 56 days from July 28, 2016 until September 22, 2016). Accordingly, we find that the record fails to support Carson's argument that her right to speedy trial was violated.

{¶ 38} Carson fourth assignment of error is overruled.

{¶ 39} Carson's fifth and final assignment of error is as follows:

THE TRIAL COURT ERRED IN AMENDING THE TWO COUNTS OF CRIMINAL DAMAGING AT BEGINNING OF TRIAL THEREBY MATERIALLY PREJUDICING APPELLANT'S DEFENSES UPON THE MERITS AND RESULTING IN A FAILURE OF JUSTICE.

{¶ 40} In her final assignment, Carson argues that the trial court erred when it allowed the amendment of the complaint to insert the names of Kinsler and Manning, the victims whose trucks were criminally damaged.

{¶ 41} Initially, we note that Carson failed to object to the trial court's decision to amend the complaint to include Kinsler and Manning's names. In the absence of an objection, we review the trial court's decision for plain error. In order to constitute plain error, the error must be an obvious defect in the trial proceedings, and the error must have affected substantial rights. *State v. Norris*, 2d Dist. Montgomery No. 26147, 2015-Ohio-624, ¶ 22; Crim.R. 52(B). Plain error should be noticed "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 42} Crim.R. 7(D) provides in part:

The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged.   If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury.

* * *

**{¶ 43}** As previously stated, Carson argues that the addition of Manning and Kinsler as the named victims in the complaint violated her substantial rights and resulted in a failure of justice.   However, this Court has held that an amendment to identify the name of a victim does not change the identity of the offense. *See, e.g., State v. Phillips*, 75 Ohio App.3d 785, 600 N.E.2d 825 (2d Dist.1991), citing *State v. White*, 2d Dist. Greene No. 85 CA 38, 1986 WL 4613 (Apr. 17, 1986); *see also State v. Owens*, 51 Ohio App.2d 132, 149, 366 N.E.2d 1367 (9th Dist.1975) ("An amendment to an indictment which changes the name of the victim changes neither the name nor the identity of the crime charged.").

**{¶ 44}** In the instant case, the inclusion of Manning and Kinsler as the named victims in the complaint did not change the identity or degree of the criminal damaging offenses and did not prejudice Carson's defense. Moreover, Carson has failed to demonstrate any prejudice or harm by an amendment that would identify the victims by name. Therefore, we conclude that Carson has failed to establish that the trial court erred, plainly or otherwise, when it amended the complaint to include the names of Manning and Kinsler as the two victims of criminal damaging.

**{¶ 45}** Carson's fifth and final assignment of error is overruled.

**{¶ 46}** All of Carson's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Amy Musto
Andrew D. Sexton
Carlo McGinnis
Hon. Carl S. Henderson