[Cite as *State v. Salyers*, 2020-Ohio-147.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                    CASE NO.  1-19-17

      v.

GABRIEL SALYERS,                        O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2018 0143

**Judgment Affirmed**

Date of Decision:  January 21, 2020

APPEARANCES:

      *Patrick T. Clark and Addison M. Spriggs* **for Appellant**

      *Jana E. Emerick* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Gabriel W. Salyers ("Salyers"), appeals the March 20, 2019 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from the April 3, 2018 death of J.S., the minor child of Shelly Wireman ("Wireman"). Salyers and Wireman, who were not married, lived together with Wireman's children from other relationships, including J.S. Occasionally, Salyers's children from another relationship would also be present. At 7:22 p.m. on April 1, 2018, Wireman made a 9-1-1 emergency call to report that she found J.S. unresponsive in his bedroom. Shortly thereafter, J.S. was transported to the hospital where he was pronounced dead two days later. An autopsy revealed multiple new and healing injuries, including new injuries to his head and neck (as a result of being shaken) and a new bruise to his penis. During an interview with law enforcement, Salyers admitted that he shook J.S., flicked his penis, and applied pressure to J.S.'s abdomen with his fist.

{¶3} On May 17, 2018, the Allen County Grand Jury indicted Salyers on seven criminal charges: Count one of aggravated murder in violation of R.C. 2903.01(C), (F) and 2929.02(A), an unclassified felony; Count Two of murder in violation of R.C. 2903.02(B), (D) and 2929.02(B), an unclassified felony; Counts Three, Four, and Five of endangering children in violation of R.C. 2919.22(B)(1),

(E)(2)(d), second-degree felonies; Count Six of domestic violence in violation of R.C. 2919.25(A), (D)(3), a fourth-degree felony; and Count Seven of possession of drugs in violation of R.C. 2925.11(A), (C)(2)(a), a first-degree misdemeanor. (Doc. No. 4). On May 24, 2018, Salyers appeared for arraignment and entered pleas of not guilty. (Doc. No. 14).

{¶4} On July 3, 2018, Salyers filed a motion to suppress evidence, which the trial court denied on August 28, 2018. (Doc. Nos. 29, 42). On February 22, 2019, the State filed a motion to quash a subpoena (filed by Salyers) requesting records from the Allen County Children Services Board ("ACCSB"). (Doc. No. 92). On February 26, 2019, the trial court granted this motion but ordered ACCSB to provide the records to the trial court for an in camera inspection. (Doc. No. 96). After an in camera inspection, the trial court provided Salyers with the ACCSB records which the trial court determined to be relevant to his defense. (Doc. No. 132). (*See also* Doc. No. 148).

{¶5} On February 28, 2019, Salyers filed a motion to compel the State to disclose exculpatory evidence related to Salyers's co-defendant, Shelly Wireman—namely, the State's discovery evidence provided to Wireman. (Doc. No. 98). On March 4, 2019, Salyers filed a motion notifying the trial court of his intention to use recordings depicting statements that Wireman made to law enforcement subsequent to J.S.'s death. (Doc. No. 126). Ultimately, the State stipulated to the admission at

trial of the recordings of Wireman's statements. (Doc. Nos. 137, 139). On March 9, 2019, Salyers filed a motion notifying the trial court of his intention to use evidence of Wireman's prior bad acts and evidence tending to show that Wireman has a reputation as being a dishonest and violent person. (Doc. No. 140).

{¶6} The case proceeded to a jury trial on March 12-15 and 18-19, 2019. On March 19, 2019, the jury found Salyers guilty of Counts Two, Three, Four, Five, Six, and Seven, but not guilty of the aggravated-murder charge in Count One. (Doc. Nos. 178, 179, 180, 181, 182, 183, 184). That same day, the trial court sentenced Salyers to 15 years to life in prison on Count Two, 8 years in prison on Counts Three and Five, respectively, and 180 days in jail on Count Seven. (Doc. No. 185). The trial court ordered that Salyers serve the terms for Counts Two, Three, and Five consecutively, and ordered that Salyers serve the term for Count Seven concurrently to Counts Two, Three, and Five, for an aggregate sentence of 31 years to life. (*Id.*). For purposes of sentencing, the trial court merged Counts Two, Four, and Six. (*Id.*). The trial court filed its judgment entry of conviction and sentence on March 20, 2019. (*Id.*).

{¶7} Salyers filed his notice of appeal on April 10, 2019 and raises three assignments of error. (Doc. No. 191).

## Assignment of Error No. I

**Gabriel Salyers was denied the effective assistance of counsel.
*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 8 L.Ed.2d**

**674 (1984). Sixth and Fourteenth Amendments, United States Constitution; Article 1, Sections 10 and 16, Ohio Constitution. (Vol. I T.p. 9-37; Vol. II T.p. 268-283; Vol. III T.p. 430-431; 501;535; 590; Vol. IV T.p. 600-653, 688; 691-693; 722; 757-773; Vol. V T.p. 805-811; 861. State's Exhibits 16, 21, 23, 35, 36, 23A, 31A, 34 A, 33B, 34B).**

{¶8} In his first assignment of error, Salyers argues that his trial counsel was ineffective for (1) "stipulating to the admission of Shelly Wireman's videotaped interviews with law enforcement, in pursuit of a defense that identified Shelly as [J.S.'s] assailant"; (2) "making factual misrepresentations about the nature of [J.S.'s] injuries during opening statements"; and (3) "failing to object to inadmissible evidence related to [Salyers's] alleged prior acts of domestic violence" and "to the admission of transcript summaries and law enforcement opinions." (Appellant's Brief at 10-11).

*Standard of Review*

{¶9} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687.

Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910, 98 S.Ct. 3135 (1978).

{¶10} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, ¶ 48, quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

{¶11} Salyers raises three challenges on appeal to the effectiveness of his trial counsel. First, Salyers contends that his trial counsel was ineffective for stipulating to the admission of video recordings depicting Wireman's interviews with law enforcement. Specifically, Salyers contends that the evidence to which his trial counsel stipulated and presented to the jury reflects statements which are

"directly at odds with defense theory"; that "discuss uncharged crimes"; and that suggest that he sexually assaulted J.S. (Appellant's Brief at 13).

{¶12} "It is a well-established principle that decisions regarding stipulations are matters of trial strategy and tactics." *State v. Roy*, 10th Dist. Franklin No. 14AP-986, 2015-Ohio-4959, ¶ 22, citing *State v. Rippy*, 10th Dist. Franklin No. 08AP-248, 2008-Ohio-6680, ¶ 16, citing *State v. Edwards*, 119 Ohio App.3d 106 (10th Dist.1997), citing *United States v. Teague*, 953 F.2d 1525 (11th Cir.1992). Indeed, the record reflects (and Salyers concedes) that his trial counsel's stipulation was part of his trial strategy to show that Wireman was the person who caused J.S.'s death. (*See* Appellant's Brief at 13). *Compare State v. Harlow*, 4th Dist. Washington No. 13CA29, 2014-Ohio-864, ¶ 18 (noting that "the record supports the conclusion that counsel's stipulation was part of her strategy as she believed the DVD contradicted the trooper's testimony"). This court will not second guess Salyers's trial counsel's strategy that the jury might view the video recordings of Wireman's interviews with law enforcement more favorably than Salyers's suggestion (without more) that Wireman was the person who caused J.S.'s death. *See State v. Smith*, 5th Dist. Licking No. 11-CA-66, 2012-Ohio-967, ¶ 52. That is, Wireman (outside the presence of the jury) refused to testify on Fifth Amendment grounds. Thus, Salyers's trial counsel was faced with the decision of resting on the mere allegation that Wireman was the person who caused J.S.'s death or to present Wireman's

interviews with law enforcement to permit the jury to weigh her credibility—a clear strategic or tactical trial decision. Therefore, Salyers's trial counsel was not ineffective in this instance.

{¶13} Next, Salyers argues that his trial counsel was ineffective for misrepresenting the nature of J.S.'s injuries during opening statements. Specifically, Salyers contends that his trial counsel's statements describing J.S.'s skull as "bashed in" and suggesting that J.S. fell "down basement stairs" one week prior to his death were factually incorrect, and that those misrepresentations undermined his trial counsel's credibility with the jury. (Appellant's Brief at 16). "[A] defendant in a criminal trial is entitled to have his counsel accurately represent in opening statement the evidence as he knows it to be." *State v. Freeman*, 8th Dist. Cuyahoga No. 41190, 1980 WL 354906, *8 (June 19, 1980). We review opening statements and closing arguments in their entirety. *See State v. Siefer*, 3d Dist. Hancock No. 5-09-24, 2011-Ohio-1868, ¶ 46; *State v. Thompson*, 8th Dist. Cuyahoga No. 42977, 1981 WL 4550, *5 (Oct. 8, 1981). *See also State v. Demoss*, 2d Dist. Champaign No. 2001-CA-5, 2002 WL 360581, *7 (Mar. 8, 2002).

{¶14} After reviewing Salyers's trial counsel's opening statement in its entirety, Salyers's trial counsel's statements regarding J.S.'s injuries do not amount to a substantial violation of counsel's essential duties to his client. *See State v. Bortner*, 9th Dist. Lorain No. 02CA008189, 2003-Ohio-3508, ¶ 29. *See also State*

*v. Teitelbaum*, 10th Dist. Franklin No. 14AP-310, 2016-Ohio-3524, ¶ 115. That is, when read in context, Salyers's trial counsel was attempting to capture for the jury law enforcement's interviews with Salyers by describing the knowledge of the nature of J.S.'s injuries that law enforcement had at the time. Indeed, a review of the video recordings depicting those interviews—one of which occurring prior to J.S.'s death and both of which occurring prior to the autopsy—reflects law enforcement describing J.S.'s head injuries as including fractures and contusions caused by blunt-force trauma. Likewise, testimony was presented that J.S. exhibited "a battle sign" bruise to his head, which "usually indicates a basilar skull fracture." (Mar. 12-19, 2019 Tr., Vol. IV, at 614). It was determined (after the autopsy) that J.S. "did not have a basilar skull fracture." (*Id.*). Moreover, Salyers's trial counsel's description of J.S.'s head injury (when read in context) was used to convey to the jury that J.S.'s outward appearance did not reflect any obvious catastrophic injury. While the State objected to Salyers's trial counsel's characterization of J.S.'s skull as "bashed in," Salyers's trial counsel informed the trial court that he was describing the evidence as he understood it for the jury. Nevertheless, Salyers's trial counsel withdrew his statement and explained to the jury the purpose of his statement. Under the facts presented, we cannot conclude that Salyers's trial counsel was ineffective.

{¶15} Further, Salyers's argument that his trial counsel was ineffective for misstating the timeline of J.S.'s injuries does not constitute deficient performance. *See State v. Gardiner*, 2d Dist. Montgomery No. 17000, 1998 WL 835530, *3-4 (Dec. 4, 1998). *See also State v. Elmore*, 4th Dist. Scioto No. 1832, 1991 WL 238227, *5 (Nov. 6, 1991). As we previously noted, the theory of Salyers's defense was that Wireman was the person who caused J.S.'s death. As part of that theory, Salyers wanted the jury to learn that J.S. experienced a number of traumatic injuries in the weeks prior to his death, one of which being a fall down basement steps. During his opening statement, Salyers's trial counsel informed the jury that this fall occurred "[a] week prior" to J.S.'s death. (Mar. 12-19, 2019 Tr., Vol. II, at 276). After the State objected by asserting that the fall occurred "almost three and a half weeks prior to [J.S.'s death]", Salyers's trial counsel informed the trial court that he "thought it was within a week or so" and that it "was [his] impression" when the fall occurred. (*Id.* at 277). Still, Salyers's trial counsel corrected his timeline statement for the jury. Notwithstanding Salyers's trial counsel's correction, the misstatement highlighted Salyers's defense theory for the jury—that J.S. suffered several traumatic injuries in the weeks prior to his death.

{¶16} Moreover, the trial court instructed the jury that opening statements and closing arguments are not evidence, and the jury is presumed to follow the instructions provided by the trial court. (Mar. 12-19, 2019 Tr., Vol. II, at 260);

-10-

*Bortner* at ¶ 29 ("Moreover, the trial court instructed the jury that 'opening statements are not evidence, but they are a chance for the lawyers to tell you what they think the evidence will be.'"); *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, ¶ 147, citing *State v. Henderson*, 39 Ohio St.3d 24, 33 (1988). *See also State v. Coleman*, 85 Ohio St.3d 129, 135-136 (1999); *Columbus v. Beasley*, 10th Dist. Franklin No. 17AP-629, 2019-Ohio-719, ¶ 78. For these reasons, we conclude Salyers cannot show that there is a reasonable probability that, but for his trial counsel's misstatements, the outcome of his trial would have been different. That is, Salyers cannot show that those misstatements damaged his trial counsel's credibility with the jury, which resulted in an unfavorable outcome. Importantly, Salyers cannot demonstrate that those misstatements damaged his trial counsel's credibility with the jury because the jury acquitted Salyers of the most serious charge he was facing—aggravated murder.

{¶17} Third, Salyers argues that his trial counsel was ineffective for failing to object to the admission of prior domestic-violence incidents, opinion testimony, and transcripts and summaries of audio, video, and text-message exhibits. Specifically, Salyers contends that his trial counsel should have objected to the admission of (1) State's Exhibit 16—a photograph depicting "a door with a hole that [Salyers] punched in it"; (2) State's Exhibit 31—a video recording depicting Salyers's interrogation with law enforcement during which he discusses "prior

incidents of 'verbal' domestic violence with an ex-girlfriend"; (3) the State's cross-examination of Lisa Salyers ("Lisa), Michelle Amstuz ("Amstuz"), and Tara Campbell ("Campbell"); (4) Detective Steven Stechschulte's ("Detective Stechschulte") "conclusion that [Salyers] provided a truthful confession, but was deceptive in other parts of his interview"; and (5) State's Exhibits 23A, 31A, 32A, 33A, 33B, 34A, and 34B—transcripts or summaries of audio, video, and phone exhibits.[1]  (Appellant's Brief at 18, 22).

{¶18} "The 'failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'"  *Liles*, 2014-Ohio-259, at ¶ 49, quoting *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 139, citing *State v. Holloway*, 38 Ohio St.3d 239, 244 (1988).   "Because 'objections tend to disrupt the flow of a trial, and are considered technical and bothersome by the fact-finder,' competent counsel may reasonably hesitate to object in the jury's presence."  *State v. Campbell*, 69 Ohio St.3d 38, 53 (1994), quoting Jacobs, *Ohio Evidence*, at iii-iv (1989).  "To prevail on such a claim, a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was materially prejudiced by counsel's ineffectiveness."  *Holloway* at 244, citing *Lytle,* 48 Ohio St.3d at 396-397 and *Strickland,* 466 U.S at 668.  *See Liles* at ¶ 49

---

[1] Salyers identifies State's Exhibit 21 as the video recording depicting his discussion with law enforcement regarding his prior domestic-violence conviction.  It is not.  State's Exhibit 21 is a report regarding drugs, while State's Exhibit 31 reflects a video recording of Salyers's interview with law enforcement.  We are presuming that Salyers meant to direct us to State's Exhibit 31.

("'"In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice."'"), quoting *Johnson* at ¶ 140, quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir.2006), and citing *Campbell* at 52-53.

{¶19} We will begin by addressing Salyers's argument that his trial counsel was ineffective for failing to object to evidence of prior domestic-violence incidents. "'Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."'" *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 56, quoting *State v. May*, 3d Dist. Logan No. 8-11-19, 2012-Ohio-5128, ¶ 69, quoting Evid.R. 404(B). *See also State v. Wendel*, 3d Dist. Union No. 14-16-08, 2016-Ohio-7915, ¶ 21. "'However, there are exceptions to the general rule: "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."'" *Bagley* at ¶ 56, quoting *May* at ¶ 69, quoting Evid.R. 404(B). *See also* R.C. 2945.59. "'The list of acceptable reasons for admitting testimony of prior bad acts into evidence is non-exhaustive.'" *Bagley* at ¶ 56, quoting *State v. Persohn*, 7th Dist. Columbiana

No. 11 CO 37, 2012-Ohio-6091, ¶ 23, citing *State v. Melton*, 11th Dist. Lake No. 2009-L-078, 2010-Ohio-1278, ¶ 78, and citing *State v. Faye*, 3d Dist. Wyandot Nos. 16-99-08 and 16-99-09, 2000 WL 566741, *4 (May 4, 2000).

{¶20} One such exception is when a prior conviction is an element of a charged offense. *See, e.g.*, *State v. Myers*, 9th Dist. Summit No. 25737, 2012-Ohio-1820, ¶ 11. *See also* R.C. 2945.75(B)(1) (providing that "[w]henever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction"). "Accordingly, even if a defendant's prior convictions are inadmissible under Evid.R. 404(B) and R.C. 2945.59, they may be admissible under R.C. 2945.75, so long as they are not offered 'to prove the character of a person in order to show that he acted in conformity therewith.'" *Myers* at ¶ 12, quoting *State v. Thompson*, 9th Dist. Lorain No. 98CA007112, 2000 WL 235535, *4 (Mar. 1, 2000), and citing *State v. Swiergosz*, 6th Dist. Lucas Nos. L-10-1013 and L-10-1052, 2012-Ohio-30, ¶ 23 and *State v. Rivera*, 99 Ohio App.3d 325, 330-331 (11th Dist.1994) (concluding that there is no conflict between R.C. 2945.75 and Evid.R. 404(B) because the latter acknowledges "that evidence of other crimes may be admitted for purposes other than to prove that the defendant acted in conformity therewith").

**{¶21}** Here, evidence of Salyers's prior domestic-violence conviction was properly admitted because it was proof of an element of Count Six. *See State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, ¶ 118 (concluding that evidence of Spaulding's prior domestic-violence conviction was properly admitted because it "was not just other-acts evidence, it was proof of an element of" the domestic-violence charge for which he stood trial). Indeed, to convict Salyers of domestic-violence as a fourth-degree felony, the State was required to prove that he had a prior domestic-violence conviction. *See id.* ("To convict Spaulding of third-degree-felony domestic violence, the state had to prove that he had two or more prior domestic-violence convictions."); R.C. 2919.25(D)(3). *See also State v. Bibler*, 3d Dist. Marion No. 9-13-70, 2014-Ohio-3375, ¶ 8 ("Because a prior domestic-violence conviction raises the degree of a subsequent offense, a prior conviction is an essential element of the offense."), citing *State v. Allen*, 29 Ohio St.3d 53, 54 (1987).

**{¶22}** Moreover, Salyers does not direct us to any evidence reflecting that any facts were revealed to the jury surrounding his prior conviction beyond what was necessary under R.C. 2945.75. *See Myers* at ¶ 12 ("'Facts surrounding a prior conviction that are beyond what is necessary pursuant to R.C. 2945.75, however, are admissible only to the extent permitted by Evid.R. 404(B).'"), quoting *State v. Halsell*, 9th Dist. Summit No. 24464, 2009-Ohio-4166, ¶ 13, citing *Thompson* at *4.

Stated better, and contrary to Salyers's argument on appeal, Salyers's prior domestic-violence conviction was not introduced to prove his character or that he acted in conformity with that character. Thus, any contention that his trial counsel was ineffective for failing to object to the admission of his prior domestic-violence conviction is without merit.

{¶23} Salyers also contends that his trial counsel was ineffective for failing to object to the admission of other prior domestic-violence incidents. He argues that his trial counsel should have objected to the admission of State's Exhibit 16, which is photograph depicting "a door with a hole that [Salyers] punched in it." (Appellant's Brief at 18). According to Salyers, State's Exhibit 16 reflects evidence of other crimes, wrongs, or acts used by the State to show that he is violent and that he acted in conformance with that character trait. We disagree. State's Exhibit 16 was identified by Identification Officer Gregory Adkins of the Lima Police Department—who photographed the house at which J.S. resided when he was injured—as "the bathroom door to the main bathroom with a hole punched in the hollow core door." (Mar. 12-19, 2019 Tr., Vol. II, at 302, 304, 310). In other words, State's Exhibit 16 was *not* introduced as character evidence; rather, it was introduced as evidence of the scene of the crime. To show that the hole did not occur at the time J.S. sustained his life-ending injuries, Salyers explained to the jury the origin of the hole. (*See* Mar. 12-19, 2019 Tr., Vol. V, at 839-840). Thus,

Salyers's trial counsel was not ineffective for failing to object to the admission of State's Exhibit 16.

{¶24} Likewise, Salyers's trial counsel was not ineffective for failing to object to the cross-examinations of Lisa, Amstuz, or Campbell. Another acceptable reason for admitting testimony of prior bad acts into evidence is the "admission of '[e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same * * * .'" *State v. Velez*, 3d Dist. Putnam No. 12-13-10, 2014-Ohio-1788, ¶ 118, quoting Evid.R. 404(A)(1). "Character evidence offered under Evid.R. 404(A)(1) 'must bear reference to the nature of the charge or, in other words, be confined to such traits of character that are inconsistent with commission of the alleged offense.'" *Id.*, quoting *Toledo v. Schmiedebusch*, 192 Ohio App.3d 402, 2011-Ohio-284, ¶ 39 (6th Dist.).

{¶25} "In other words, Evid.R. 404(A)(1) allows a defendant to '"offer evidence of his good character as proof that he did not commit the act charged because such conduct is not in accord with his character[,]"' but if he does, '"the prosecution [may] offer evidence of the bad character of the accused."'" *Id.* at ¶ 119, quoting *State v. Jacobs*, 4th Dist. Gallia No. 03CA24, 2004-Ohio-3393, ¶ 20, quoting Gianelli, *Giannelli Snyder Evidence*, at 229 (1996). "'By introducing such evidence, the defendant "opens the door" for the prosecution, which is then permitted to rebut or impeach the character evidence on cross-examination.'" *Id.*,

quoting *Jacobs* at ¶ 20, citing Evid.R. 405(A) and *State v. Grubb*, 111 Ohio App.3d 277 (2d Dist.1996).

{¶26} Here, Salyers "opened the door" for the prosecution to offer evidence of Salyers's violent character. Lisa (Salyers's mother) testified in Salyers's defense that she had no knowledge of Salyers "ever harm[ing] a baby or a young child." (Mar. 12-19, 2019 Tr., Vol. IV, at 690). Amstuz (Salyers's neighbor), who also testified in Salyers's defense, testified that she never saw Salyers act violently toward children. (*Id.* at 764). Finally, although Campbell (the mother of Salyers's children) testified to prior domestic-violence incidents in which she was involved with Salyers, she testified in Salyers's defense that she never saw him act violently toward children. (Mar. 12-19, 2019 Tr., Vol. V, at 799-801). In other words, one of the purposes of these defense witnesses' testimony was to attest to the character of Salyers to suggest that he did not cause J.S.'s death. *See State v. Coleman*, 6th Dist. Lucas No. L-15-1056, 2016-Ohio-7335, ¶ 37; *State v. Sims*, 3 Ohio App.3d 321, 323-324 (8th Dist.1981); *State v. Elliot*, 25 Ohio St.2d 249 (1971), paragraph two of the syllabus, *vacated in part on other grounds*, *sub nom. Elliot v. Ohio*, 408 U.S. 939, 92 S.Ct. 2872 (1972). Accordingly, questions on cross-examination concerning Salyers's violent character fit squarely within the scope of Lisa's, Amstuz's, and Campbell's direct testimony. *See Velez* at ¶ 120. Therefore, because

an objection to the State's cross-examination of Lisa, Amstuz, or Campbell would have been specious, Salyers's trial counsel was not ineffective in this instance.

{¶27} Having concluded that Salyers's trial counsel was not ineffective for failing to object to evidence of prior domestic-violence incidents, we turn to Salyers's argument that his trial counsel was ineffective for failing to object to Detective Stechschulte's testimony and the admission of State's Exhibits 23A, 31A, 32A, 33A, 33B, 34A, and 34B. Regarding Detective Stechschulte's testimony, Salyers contends that Detective Stechschulte's "conclusion that [Salyers] provided a truthful confession, but was deceptive in other parts of his interview" is inadmissible under Evid.R. 701 and 702.

{¶28} "Evid.R. 701 governs opinion testimony by lay witnesses and provides that such testimony 'is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.'" *State v. Carson*, 2d Dist. Montgomery No. 27566, 2018-Ohio-4352, ¶ 12, quoting Evid.R. 701.

{¶29} In contrast, Evid.R. 702 permits a witness to testify as an expert if all of the following applies:

> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information.

Evid.R. 702.

**{¶30}** "The line between expert testimony under Evid.R. 702 and lay opinion testimony under Evid.R. 701 is not always easy to draw." (Citations omitted.) *State v. Ndao*, 2d Dist. Montgomery No. 27368, 2017-Ohio-8422, ¶ 25. However, "'courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702.'" *Id.*, quoting *Hetzer-Young v. Elano Corp.*, 2d Dist. Greene No. 2015-CA-38, 2016-Ohio-3356, ¶ 43, citing *State v. McKee*, 91 Ohio St.3d 292, 296 (2001).

> "'Although these cases are of a technical nature in that they allow lay opinion testimony on a subject outside the realm of common knowledge, they still fall within the ambit of the rule's requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue. These cases are not based on specialized knowledge within the scope of Evid.R. 702, but rather are based upon a layperson's personal knowledge and experience.'"

*Id.*, quoting *Hertzer-Young* at ¶ 43, quoting *McKee* at 296-297, and citing *State v. Jones*, 2d Dist. Montgomery No. 26289, 2015-Ohio-4116, ¶ 107 and *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463 ¶ 77.

**{¶31}** "It is a general rule that a witness cannot express an opinion regarding the truthfulness of another witness." *State v. Daley*, 3d Dist. Seneca No. 13-13-26, 2014-Ohio-2128, ¶ 49, citing *State v. Boston*, 46 Ohio St.3d 108, 128-129 (1989), *modified on other grounds*, *State v. Dever*, 64 Ohio St.3d 401 (1992), *State v. Bump*, 3d Dist. Logan No. 8-12-04, 2013-Ohio-1006, ¶ 82, and *State v. Hensley*, 6th Dist. Lucas No. L-03-1005, 2005-Ohio-664, ¶ 38.

> "When a witness expresses an opinion as to the veracity of another witness, it has the effect of acting as a 'litmus test' on the key issue in the case and infringing on the role of the fact finder, 'who is charged with making determinations of veracity and credibility.' This is particularly true when an investigating police officer expresses an opinion as to whether a witness is being truthful."

*Id.*, quoting *Hensley* at ¶ 38, quoting *Boston* at 128-129, and citing *State v. Young*, 8th Dist. Cuyahoga No. 79243, 2002-Ohio-2744, ¶ 70-72.

**{¶32}** In this case, the State did not elicit Detective Stechschulte's opinion regarding the veracity of Salyers's confession on direct examination. Rather, Salyers's trial counsel "opened the door" for the State to ask Detective Stechschulte questions on re-direct examination regarding the veracity of Salyers's confession by eliciting testimony regarding the veracity of Salyers's confession on cross-examination. *Compare State v. Kelley*, 9th Dist. Summit No. 24660, 2011-Ohio-4999, ¶ 31 ("In this case, defense counsel opened the door for the State to ask questions regarding the victim's veracity by eliciting testimony regarding the victim's veracity on cross-examination."). "'Under the "opening the door" doctrine,

where a party has elicited or introduced prejudicial or inadmissible testimony, his opponent, in the trial court's discretion, may introduce evidence on the same issue in order to rebut any false impression that may have resulted from the earlier admission.'" *State v. McGuire*, 2d Dist. Montgomery No. 25455, 2013-Ohio-3280, ¶ 21 quoting *State v. Deleon*, 2d Dist. Montgomery No. 18114, 2001 WL 561298, *8 (May 25, 2001), citing *United States v. Segines*, 17 F.3d 847, 856 (6th Cir.1994).

**{¶33}** On cross-examination, Salyers's trial counsel extensively cross-examined Detective Stechschulte about the veracity of Salyers's confession. (*See* Mar. 12-19, 2019 Tr., Vol. III, at 410-412, 415-427). Significantly, Salyers's trial counsel asked Detective Stechschulte whether he was "concerned about getting a false confession * * * ?" (*Id.* at 422). Thus, on re-direct examination, the State inquired as to why Detective Stechschulte was not concerned about false confessions. (*Id.* at 430-431). Therefore, because Salyers's trial counsel opened the door to questioning regarding the truthfulness of Salyers's confession on cross-examination, the State was permitted to explore that line of questioning on re-direct examination. *See Kelley* at ¶ 31, citing *State v. Huff*, 145 Ohio App.3d. 555, 560 (1st Dist.2001). Accordingly, Salyers's ineffectiveness argument with respect to any objection to Detective Stechschulte's testimony fails.

**{¶34}** Finally, Salyers argues that his trial counsel was ineffective for failing to object to the admission of State's Exhibits 23A, 31A, 32A, 33A, 33B, 34A, and

34B. Specifically, Salyers argues that those exhibits were inadmissible under Evid.R. 1002—Ohio's "best evidence" rule. Evid.R. 1002 provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio."

{¶35} "Evid.R. 1002 generally requires that an original recording be admitted into evidence in order to prove the contents of the recording, while Evid.R. 1003 allows for the admission of a duplicate recording if there is no genuine issue as to authenticity and it would not be unfair to admit the duplicate." *State v. Fitzgerald*, 9th Dist. Summit No. 23072, 2007-Ohio-701, ¶ 31. "Neither section precludes the admission of a transcript of the recording for the purposes of supplementing the recording itself where either the original recording or a duplicate recording has also been admitted." *Id.*, citing *State v. Graves*, 8th Dist. Cuyahoga No. 66238, 1994 WL 547743, *4 (Oct. 6, 1994) and *In re Garrett*, 1st Dist. Hamilton No. C-950243, 1996 WL 426721, *3 (July 31, 1996). *See also State v. Waddy*, 63 Ohio St.3d 424, 445 (1992) ("Where there are no 'material differences' between a tape admitted into evidence and a transcript given to the jury as a listening aid, there is no prejudicial error."), *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997).

{¶36} Here, State's Exhibits 23A, 31A, 32A, 33A, and 34A depict transcriptions of Salyers's interviews with law enforcement, jailhouse calls, and text-message printouts, while State's Exhibits 33B and 34B are excerpts of the full transcription of the jailhouse calls and text messages. Not only were the recordings played for the jury, those recordings were also admitted into evidence. *Compare State v. Irwin*, 7th Dist. Columbiana No. 11-CO-6, 2012-Ohio-2704, ¶ 84 (noting that "the original recording was played for the jury" and that "the original recording was provided to prove the content of the 911 call in accordance with Evid.R. 1002"). Importantly, Salyers has not identified any material differences between the recordings and the transcripts or the text-message printouts and the file containing those text messages, or between the excerpts and the full transcriptions, and we see none. (*See* Mar. 12-19, 2019 Tr., Vol. II, at 348, 372-373); (Mar. 12-19, 2019 Tr., Vol. III, at 508-509, 514); *State v. Jones*, 4th Dist. Highland No. 04CA9, 2005-Ohio-768, ¶ 27; *Irwin* at ¶ 85 (noting that there were "no inconsistencies between the tape and the transcript"). *See also Waddy* at 445; *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 98. Thus, we see no error with the admission of those exhibits. *Fitzgerald* at ¶ 33 ("We find that neither Evid.R. 1002 nor Evid.R. 1003 prohibits the admission of the transcripts into evidence where, as here, the recording itself is also admitted."). *See Jones* at ¶ 28; *State v. Montana*, 8th Dist. Cuyahoga No. 51418, 1987 WL 11679, *11 (Apr. 28, 1987). *See also State v. Crawford*, 117 Ohio

App.3d 370, 377 (1st Dist.1996), citing *State v. Rogan*, 94 Ohio App.3d 140, 163 (2d Dist.1994) and *In Re Garrett* at *3. Therefore, Salyers's trial counsel was not ineffective for failing to object to the admission of 23A, 31A, 32A, 33A, 33B, 34A, and 34B.

{¶37} For these reasons, Salyers's trial counsel was not ineffective, and his first assignment of error is overruled.

## Assignment of Error No. II

**Gabriel Salyers was denied his constitutional right to present a complete defense. Fifth, Sixth, and Fourteenth Amendments, United States Constitution; Article I, Sections 10 and 16, Ohio Constitution. *Holmes v. South Carolina*, 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 506 (2006). (Vol. I T.p. 10-12, 39-41; Vol. IV T.p. 671, 748, 775; Defendant's Exhibits C, D, E, F, H, J, K, L, M, N, O, P, Q, R, S, T, U, V, W, X, Y, Z, AA, DD, EE, FF, GG, and HH).**

{¶38} In his second assignment of error, Salyers argues that he was unable to present a complete defense because the trial court "excluded evidence which would have exculpated [Salyers] and inculpated [Wireman]." (Appellant's Brief at 27). Specifically, Salyers contends that the trial court abused its discretion by excluding evidence which would have inculpated Wireman and exculpated him.

*Standard of Review*

{¶39} Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-

2815, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

*Analysis*

{¶40} We will begin by addressing Salyers's argument that the trial court abused its discretion by excluding evidence which would have inculpated Wireman. Specifically, he contends that the trial court should have permitted him to (1) ask "questions about [Wireman's] previous violence toward her ex-husband"; (2) have "access to Children's Services records that related to issues with [Wireman's] prior care of her daughters"; and (3) "inquire about [Wireman's] maternal instincts." (Appellant's Brief at 27-28).

{¶41} Prior to the start of trial, Salyers notified the trial court of his intention to use evidence of Wireman's previous violence toward her ex-husband. The trial court (prior to voir dire) denied Salyers's request (which was opposed by the State) to introduce any evidence related to an incident between Wireman and an ex-husband during which she allegedly "cut him with a knife." (Mar. 12-19, 2019 Tr., Vol. I, at 11, 18-19, 39-40). On appeal, Salyers contends that the trial court improperly excluded this evidence under Evid.R. 404. However, Evid.R. 404 applies to "evidence of an act committed by the *defendant* to prove the defendant's propensity to commit the crime at issue." (Emphasis added.) *State v. Owens*, 8th

Dist. Cuyahoga No. 107494, 2019-Ohio-2221, ¶ 18, citing *State v. Stull*, 9th Dist. Summit No. 26146, 2012-Ohio-3444, ¶ 8 (evidence of a codefendant's other acts does not implicate Evid.R. 404(B) in the defendant's trial). *See also* R.C. 2945.59. Instead, the admission or exclusion of such evidence rests on its relevance and whether its probative value is substantially outweighed by the danger of unfair prejudice.[2] *See Stull* at ¶ 8, citing Evid.R. 401 and 403.

{¶42} Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Under Evid.R. 403(A), '[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.'" *Velez*, 2014-Ohio-1788, at ¶ 122, quoting *State v. Maag*, 3d Dist. Hancock Nos. 5-03-32 and 5-03-33, 2005-Ohio-3761, ¶ 71. "'Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision.'" *Id.*, quoting *State v. Calhoun*, 11th Dist. Ashtabula No. 2010-A-0057, 2012-Ohio-1128, ¶ 82.

{¶43} Here, the trial court—prior to the start of trial—denied Salyers's request to introduce evidence of Wireman's previous violence toward her ex-husband after his request was opposed by the State. In other words, the State

---

[2] Neither Evid.R. 608 or 609 are implicated in this case since Wireman—the potential witness—did not testify on Fifth Amendment grounds.

requested that the trial court exclude that evidence from trial. *See State v. Lemmon*, 9th Dist. Wayne No. 2531, 1990 WL 72357, *2 (May 23, 1990) ("The effect of the granting of a motion in limine in favor of the state in a criminal proceeding is to temporarily prohibit the defendant from making reference to evidence which is the subject of the motion."); (Appellant's Reply Brief at 6). *See also State v. Morales*, 1st Dist. Hamilton No. C-120670, 2014-Ohio-362, ¶ 27. That is, the parties sought an anticipatory ruling by the trial court on the admissibility of evidence of Wireman's previous violence toward her ex-husband. *See Morales* at ¶ 30.

{¶44} "A motion in limine is a request '"that the court limit or exclude use of evidence which the movant believes to be improper, and is made in advance of the actual presentation of the evidence to the trier of fact, usually prior to trial."'" *State v. Mobarak*, 10th Dist. Franklin No. 14AP-517, 2017-Ohio-7999, ¶ 23, quoting *Gordon v. Ohio State Univ.*, 10th Dist. Franklin No. 10AP-1058, 2011-Ohio-5057, ¶ 82, quoting *State v. Winston*, 71 Ohio App.3d 154, 158 (2d Dist.1991). *See Morales* at ¶ 28 ("When a motion on an evidentiary matter is properly characterized as 'liminal, * * *[f]inality does not attach when the motion is granted,' because the trial court has the discretion 'to change its ruling on the disputed evidence in its actual context at trial.'"), quoting *Defiance v. Kretz*, 60 Ohio St.3d 1, 4 (1991), citing *State v. Grubb*, 28 Ohio St.3d 199, 201-202 (1986), and citing *Garrett v. Sandusky*, 68 Ohio St.3d 139, 141 (1994). "'[A] motion in limine is a

preliminary ruling which must be renewed at trial or the argument made therein is waived for purposes of appeal.'"" *Mobarak* at ¶ 23, quoting *Gold v. Burnham*, 10th Dist. Franklin No. 14AP-603, 2015-Ohio-1431, ¶ 13, quoting *State v. Smith*, 7th Dist. Mahoning No. 11 MA 120, 2013-Ohio-756, ¶ 128. *See also State v. Holland*, 5th Dist. Stark No. 2011 CA 00104, 2012-Ohio-486, ¶ 15 ("The established rule in Ohio is the grant or denial of a motion in limine is not a ruling on the evidence."), citing *Grubb* at 200-201. "'"An appellate court need not review the propriety of [a decision on a motion in limine] unless the claimed error is preserved by an objection, proffer, or ruling on the record when the issue is actually reached and the context is developed at trial.'" *Mobarak* at ¶ 23, quoting *Grubb* at 203, quoting Palmer, *Ohio Rules of Evidence Rules Manual*, at 446 (1984).

{¶45} Because the trial court anticipatorily excluded the evidence of Wireman's previous violence toward her ex-husband, Salyers was required to seek a final determination on the admissibility of the disputed evidence at trial, when the court could review it in the context of the other evidence. *See Lemmon* at *2; *Morales* at ¶ 30. Salyers directs us to no evidence in the record that Salyers attempted to introduce the evidence during trial, and we see none. Therefore, Salyers waived this argument. *Accord Lemmon* at *2. *See State v. Logsdon*, 3d Dist. Seneca No. 13-05-29, 2007-Ohio-6715, ¶ 11; *State v. Cutts*, 5th Dist. Stark No. 2008CA000079, 2009-Ohio-3563, ¶ 192.

{¶46} Next, Salyers argues that the trial court abused its discretion by denying him access to "records related to issues with [Wireman's] prior care of her daughters." (Appellant's Brief at 27). Crim.R. 16 provides the discovery rules for criminal proceedings. *State v. Engle*, 166 Ohio App.3d 262, 2006-Ohio-1884, ¶ 7 (3d Dist.). That rule provides, in its relevant part, that a criminal defendant is entitled to discovery of any evidence which is "favorable to the defendant and material to either guilt or punishment." Crim.R. 16(B)(5). *See State v. Branch*, 3d Dist. Allen No. 1-12-44, 2013-Ohio-3192, ¶ 85. *See also State v. Donnal*, 3d Dist. Allen No. 1-06-31, 2007-Ohio-1632, ¶ 8; *State v. Moore*, 3d Dist. Allen No. 1-06-89, 2007-Ohio-3600, ¶ 25.

{¶47} However, in cases involving a request for children-services records, Crim.R. 16's requirement is subject to the confidentiality that attaches to such records under R.C. 2151.421 and 5153.17. *Branch* at ¶ 85. *See Moore* at ¶ 25 ("In a criminal proceeding, it also makes the records 'admissible in evidence in accordance with the Rules of Evidence' and 'subject to discovery in accordance with the Rules of Criminal Procedure.'"), quoting R.C. 2151.421(H)(1) (Sept. 21, 2006) (current version at R.C. 2151.421(I)(1) (Oct. 17, 2019)), and citing *Donnal* at ¶ 4, 8. Yet, "a defendant's due process right to a fair trial entitles him to an in camera inspection by the trial court of confidential child[ren] services records to assess whether they contain evidence that is material to the defendant's guilt."

*Branch* at ¶ 85, citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 60, 107 S.Ct. 989 (1987).

**{¶48}** "Evidence is 'material' to a defendant's defense if there is "'a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different.""" *In re C.A.*, 8th Dist. Cuyahoga No. 102675, 2015-Ohio-4768, ¶ 81, quoting *Ritchie* at 57, quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375 (1985). "A 'reasonable probability' is "'a probability sufficient to undermine confidence in the outcome.""" *Id.*, quoting *Ritchie* at 57, quoting *Bagley* at 682. "'A defendant's right to discover exculpatory evidence' does not, however, include the 'unsupervised authority' to review such records (or to have his counsel review such records) to 'make the determination as to the materiality of the information.'" *Id.* at ¶ 82, quoting *Ritchie* at 59-60, and citing *State v. Stiles*, 3d Dist. Allen No. 1-08-12, 2009-Ohio-89, ¶ 32 ("To ensure a fair trial, a defendant has a right to an in camera review of child abuse records. * * * However, [the defendant] does not have a right, even through counsel, to inspect the records himself.") and *In re J.W.*, 9th Dist. Lorain No. 10CA009939, 2011-Ohio-3744, ¶ 15.

**{¶49}** The proper procedure for determining whether the trial court (after its in camera inspection) should release those records to a defendant requires the trial court "to determine: (1) whether the records are necessary and relevant to the

pending action; (2) whether good cause has been shown by the person seeking disclosure; and (3) whether their admission outweighs the confidentiality considerations." *State v. McGovern*, 6th Dist. Erie No. E-08-066, 2010-Ohio-1361, ¶ 28. *See Branch* at ¶ 85, citing *Johnson v. Johnson*, 134 Ohio App.3d 579, 585 (3d Dist.1999). "Good cause is shown '[w]hen it is in the best interests of the child or when the due process rights of other subjects of the record are implicated.'" *Johnson* at 583, quoting 1991 Ohio Atty.Gen.Ops. No. 91-003. *See State v. Sahady*, 8th Dist. Cuyahoga No. 83247, 2004-Ohio-3481, ¶ 31. "The defendant may have access to the information only if the trial court concludes that it 'probably would have changed the outcome of his trial.'" *In re C.A.* at ¶ 82, quoting *Ritchie* at 58.

{¶50} As with other discovery and evidentiary issues, a trial court has discretion to determine whether children-services records are discoverable. *See Moore* at ¶ 24, citing *State v. Orwick*, 153 Ohio App.3d 65, 2003-Ohio2682, ¶ 13 (3d Dist.), citing *Radovanic v. Cossler*, 140 Ohio App.3d 208, 213 (8th Dist.2000). Thus, this court will not disturb the trial court's decision on the discoverability of children-services records absent an abuse of that discretion—a decision in which trial court acted unreasonably, arbitrarily, or unconscionably. *Id.*, citing *Orwick* at ¶ 13; *Adams*, 62 Ohio St.2d at 157.

{¶51} In this case, the trial court *twice* reviewed the ACCSB records in camera and granted Salyers access to some of the records. *Compare Moore* at ¶ 23

("Significantly, the trial court reviewed all of the records in camera, and it granted Moore access to some of the records."). Specifically, the trial court provided Salyers with "several pages that were relevant to the pending case in that they included admissions attributed to [Salyers]" and "some pictures of the deceased boy that are relevant." (Doc. No. 132). The trial court concluded that the ACCSB records also contained "voluminous copies of the medical records relating to the treatment of the deceased child" but that those documents were duplicative of the discovery which was already provided to Salyers by the State. (*Id.*). Finally, the trial court concluded that "[a]ll other records are * * * unnecessary [or] irrelevant to the pending action"; "concern other children or other adults involved with the other children"; or "are reports for dates subsequent to the alleged offenses in this case and are not relevant to this case." (*Id.*). Moreover, the trial court conducted a second in camera review of the ACCSB records and concluded that "there is nothing in the [ACCSB] records that tend to show that Shelly Wireman is dishonest or violent"; "that Shelly Wireman engaged in specific instances of conduct essential to the defense"; or that "Shelly Wireman made a habit of blaming others for obvious harm done to [J.S.]." (Doc. No. 148).

{¶52} On appeal, Salyers contends that the trial court should have granted him access to additional records—namely, records concerning Wireman's conduct with her daughters—because those unreleased records contain "evidence of

[Wireman's] past wrongdoing" which would have been favorable to his defense. *Compare Moore* at ¶ 26 ("On appeal, Moore posits the unreleased records contain inconsistent statements and other information favorable to him and material to either guilt [or] punishment."). Based on our review of the ACCSB records, we conclude that the trial court did not abuse its discretion by denying Salyers access to the unreleased records because none of those records would have been material to his defense. Significantly, because Wireman did not testify at trial, none of the records would be relevant for impeachment purposes, and we see nothing in the balance of those records which implicates Wireman in causing the death of J.S. *See State v. Meadows*, 4th Dist. Scioto No. 99CA2651, 2001 WL 803822, *11 (Feb. 12, 2001), *overruled in part on other grounds*, *State v. Silverman*, 121 Ohio St.3d 581, 2009-Ohio-1576. *See also Branch*, 2013-Ohio-3192, at ¶ 86; *Donnal*, 2007-Ohio-1632, at ¶ 9.

{¶53} Finally, Salyers contends that the trial court abused its discretion by prohibiting him from inquiring about Wireman's "maternal instincts." In support of his argument, Salyers directs us to the State's objection, which was sustained by the trial court, to his question of Jodi Wireman—the mother of Wireman's ex-husband—inquiring what she observed of Wireman's "maternal instincts." (Mar. 12-19, 2019 Tr., Vol. IV, at 775). However, beyond directing us to that portion of the transcript, Salyers failed to present any citations to case law or statues in support

of his assertion. *See State v. Stevens*, 3d Dist. Allen No. 1-14-58, 2016-Ohio-446, ¶ 81; *State v. Russell*, 9th Dist. Summit No. 25154, 2010-Ohio-5466, ¶ 17.

**{¶54}** "[A] defendant has the burden of affirmatively demonstrating the error of the trial court on appeal." *State v. Stelzer*, 9th Dist. Summit No. 23174, 2006-Ohio-6912, ¶ 7, citing *State v. Cook*, 9th Dist. Summit No. 20675, 2002-Ohio-2646, ¶ 27. "Moreover, '[i]f an argument exists that can support this assignment of error, it is not this court's duty to root it out.'" *Id.*, quoting *Cook* at ¶ 27. "App.R. 12(A)(2) provides that an appellate court 'may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).'" *State v. Jackson*, 10th Dist. Franklin No. 14AP-670, 2015-Ohio-3322, ¶ 11, quoting App.R. 12(A)(2). "Additionally, App.R. 16(A)(7) requires that an appellant's brief include '[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.'" *Id.*, quoting App.R. 16(A)(7). Since we are not required to address arguments that have not been sufficiently presented for review or supported by proper authority under App.R. 16(A)(7), we will not address Salyers's argument. *Stevens* at ¶ 83, citing *State v.*

*Jordan*, 10th Dist. Franklin No. 11AP-691, 2012-Ohio-1760, ¶ 17, citing *State v. Gonzalez*, 10th Dist. Franklin No. 10AP-628, 2011-Ohio-1193, ¶ 28-29.

**{¶55}** Having concluded that the trial court did not abuse its discretion by excluding evidence which Salyers contends would have inculpated Wireman, we turn to his argument that the trial court abused its discretion by excluding evidence that would have exculpated him. Here, Salyers contends that the trial court should have permitted him to introduce "photographs of [him] with young children in his life, including his two sons and the children of previous partners." (Appellant's Brief at 28).

**{¶56}** As we previously addressed, "Evid.R. 404(A)(1) allows a defendant to '"offer evidence of his good character as proof that he did not commit the act charged because such conduct is not in accord with his character."'" *Velez*, 2014-Ohio-1788, at ¶ 119, quoting *Jacobs*, 2004-Ohio-3393, at ¶ 20, quoting Gianelli, *Giannelli Snyder Evidence*, at 229. However, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Evid.R. 403(B). "Cumulative evidence is that which goes to prove the same point already proven by other evidence." *State v. Dodson*, 3d Dist. Seneca No. 13-10-47, 2012-Ohio-5576, ¶ 9, citing *State v. Siller*, 8th Dist. Cuyahoga No. 90865, 2009-Ohio-2874, ¶ 57.

{¶57} Contrary to Salyers's argument on appeal, the trial court permitted Salyers to introduce 3 photographs (of the 28 photographs that he intended to introduce) "for background purposes." (Mar. 12-19, 2019 Tr., Vol. IV, at 671). Based on our review of the 28 photographs proffered by Salyers, each of those photographs goes to prove the same point—to "help[] construct the narrative that [Salyers] is comfortable around young children, and is not the kind of person who would abuse a toddler." (Appellant's Brief at 28). Accordingly, the trial court did not act unreasonably, arbitrarily, or unconscionably by restricting Salyers to introducing 3 of the 28 photographs he sought to introduce.

{¶58} Moreover, notwithstanding the trial court's decision permitting him to introduce 3 of those 28 photographs, Salyers did not seek to admit any of those photographs into evidence. (*See* Mar. 12-19, 2019 Tr. at 913-914). Therefore, Salyers cannot claim error with respect to those photographs.

{¶59} For these reasons, Salyers's second assignment of error is overruled.

### Assignment of Error No. III

**The cumulative impact of ineffective counsel and the trial court's erroneous evidentiary rules denied Gabriel Salyers a fair trial. *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987). (Vol. I T.p. 9-41; Vol. II T.p. 268-283; Vol. III T.p. 430-431; 501;535; 590; Vol. IV T.p. 600-653; 671; 688; 691-693; 722; 748; 757-773; Vol. V T.p. 805-811; 861. State's Exhibits 16, 21, 23, 35, 36, 23A, 31A, 34 A, 33B, 34B; Defendant's Exhibits C, D, E, F, H, J, K, L, M, N, O, P, Q, R, S, T, U, V, W, X, Y, Z, AA, DD, EE, FF, GG, and HH).**

{¶60} In his third assignment of error, Salyers argues that the cumulative effect of the trial court's errors denied him a fair trial. Specifically, Salyers argues that the cumulative effect of the errors that he alleged in his first and second assignments of error deprived him of a fair trial.

*Standard of Review*

{¶61} "Under [the] doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal." *State v. Spencer*, 3d Dist. Marion No. 9-13-50, 2015-Ohio-52, ¶ 83, citing *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 222-224 and *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). "To find cumulative error, a court must first find multiple errors committed at trial and determine that there is a reasonable probability that the outcome below would have been different but for the combination of the harmless errors." *State v. Stober*, 3d Dist. Putnam No. 12-13-13, 2014-Ohio-5629, ¶ 15, quoting *In re J.M.*, 3d. Dist. Putnam No. 12-11-06, 2012-Ohio-1467, ¶ 36.

*Analysis*

{¶62} Because we found no error as alleged by Salyers in his first or second assignments of error, the doctrine of cumulative error does not apply. *State v. Bertuzzi*, 3d Dist. Marion No. 9-13-12, 2014-Ohio-5093, ¶ 110.

**{¶63}** Salyers's third assignment of error is overruled.

**{¶64}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**